QUARLES & BRADY LLP
Firm State Bar No. 00443100
Renaissance One, Two N. Central
Phoenix, AZ 85004-2391, 602-229-5200
Brian A. Howie (AZ No. 026021)
Brian.Howie@quarles.com
Lauren E. Stine (AZ No. 025086)
Lauren.Stine@quarles.com
*Attorneys for Plaintiffs*

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
2099 Pennsylvania Ave., NW, Ste. 100
Washington, DC 20006, 201-747-1900
Thomas J. Dillickrath* (DC 483710)
TDillickrath@sheppardmullin.com

Four Embarcadero Center, 17th Floor
San Francisco, CA 94111, 415-434-9100
Amar S. Naik* (CA 307208)
ANaik@sheppardmullin.com
Molly C. Lorenzi* (CA 315147)
MLorenzi@sheppardmullin.com

GIBBS & BRUNS LLP
1100 Louisiana, Ste. 5300
Houston, TX 77002, 713-650-8805
Aundrea K. Gulley* (TX 24034468)
agulley@gibbsbruns.com
Denise Drake* (TX 24092358)
DDrake@gibbsbruns.com
*Attorneys for The Reynolds and Reynolds Co.*

MAYER BROWN LLP
71 S. Wacker Drive
Chicago, IL 60606
312-782-0600
Britt M. Miller** (IL 6256398)
BMiller@mayerbrown.com
Michael A. Scodro** (IL 6243845)
MScodro@mayerbrown.com
Brett E. Legner** (IL 6256268)
BLegner@mayerbrown.com

1999 K Street, NW
Washington, DC 20006
202-263-3000
Mark W. Ryan** (DC 359098)
mryan@mayerbrown.com
*Attorneys for CDK Global, LLC*

*Admitted Pro Hac Vice*
**Pro Hac Vice Forthcoming*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| CDK Global, LLC, a limited liability company, and The Reynolds and Reynolds Company, a corporation,<br><br>          Plaintiffs,<br>  vs.<br>Mark Brnovich, Attorney General of the State of Arizona, and John S. Halikowski, Director of the Arizona Department of Transportation,<br><br>          Defendants. | No. 2:19-cv-04849-GMS<br><br>**PLAINTIFFS' MOTION FOR LEAVE TO FILE CERTAIN DOCUMENTS UNDER SEAL** |

Pursuant to LRCiv 5.6, Plaintiffs CDK Global, LLC ("CDK") and The Reynolds and Reynolds Company ("Reynolds") (collectively, "Plaintiffs") hereby request leave to file under seal the following documents:

> (1) the unredacted Declaration of Dean Crutchfield ("Crutchfield Declaration");
>
> (2) the CDK Master Services Agreement;
>
> (3) the CDK Third Party Access Agreement;
>
> (4) the Reynolds Master Agreement; and
>
> (5) the Reynolds Customer Guide.

The Crutchfield Declaration is Exhibit A to Plaintiffs' Motion for Preliminary Injunction. The CDK Master Services Agreement and the CDK Third Party Access Agreement are, respectively, Exhibits 1 and 2 to the Crutchfield Declaration. The Reynolds Master Agreement and Reynolds Customer Guide are, respectively, Exhibits 1 and 2 to the Declaration of Kelly Hall ("Hall Declaration"). The Hall Declaration is Exhibit B to the preliminary injunction motion.

This Motion to Seal is supported by the Memorandum of Points and Authorities below as well as by the Crutchfield and Hall Declarations.

## MEMORANDUM OF POINTS AND AUTHORITIES

CDK and Reynolds rely on the unredacted Crutchfield Declaration, the CDK Master Services Agreement, the CDK Third Party Access Agreement, the Reynolds Master Agreement and the Reynolds Customer Guide in support of their preliminary injunction motion. Compelling reasons exist to file these documents under seal.

**I.      BACKGROUND**

CDK and Reynolds are automotive technology companies that develop, maintain, own, and operate proprietary enterprise computer systems known as Dealer Management Systems ("DMSs") that they license to franchised new car dealerships. (Crutchfield Decl.

¶¶ 2, 4; Hall Decl. ¶ 2.) A DMS allows dealers to compile, store, and use data effectively and to manage core operations of their businesses, including accounting, payroll, parts, service, sales, and finance and insurance functions. (Crutchfield Decl. ¶¶ 6, 8; Hall Decl. ¶ 2.) It also supports data communications between dealers, new car manufacturers, lenders, credit bureaus, application providers, and other third parties. (Hall Decl. ¶ 2).

<u>The CDK Master Services Agreement</u>

CDK licenses its DMS to its dealer customers under a set of terms and conditions that are designed to meet CDK's contractual obligations to protect the data supplied by its customers and other entities and to protect the physical infrastructure, system integrity, and data (including consumer data) against unauthorized access into the DMS's features and functions. (Crutchfield Decl. ¶¶ 7, 10.) Every CDK dealer customer that licenses a DMS from CDK signs the CDK Master Services Agreement, and that document forms the contractual relationship between CDK and the dealer and sets out their respective rights and obligations. (*Id.* ¶¶ 7, 43.)

CDK considers the Master Services Agreement to be highly confidential and proprietary. (*Id.* ¶ 43.) That document contains information that has economic value to CDK's competitors in the DMS space as well as other third parties, including new car manufacturers and application providers. (*Id.*) If CDK's competitors were to obtain this document, they could use knowledge of the terms and conditions of CDK's contractual relationship with its dealers to harm CDK's competitive standing by offering more favorable terms and conditions to CDK's dealer customers.[1] (*Id.*) This information is not

---

[1] Although CDK and Reynolds are co-plaintiffs in this matter, they also are competitors in the DMS market. Both parties have agreed to treat the documents that are the subject of this Motion to Seal as "Attorneys Eyes Only" until a Stipulated Protective Order can be negotiated with Defendants and entered by the Court. As noted *infra*, that is how the parties have treated these documents in other pending lawsuits in which they both are parties, including an MDL proceeding in the United States District Court for the Northern District of Illinois. *See In re Dealer Mgmt. Sys. Antitrust Litig.*, MDL No. 2817.

generally known by others, and CDK consistently has treated the different iterations of its Master Services Agreement as confidential and proprietary. (*Id.*) The document is not publicly available on CDK's website. (*Id.*) In other pending litigation involving CDK and its DMS, CDK has designated prior versions of this document as confidential under stipulated protective orders. (*Id.*)

### The CDK Third Party Access Agreement

The CDK Third Party Access Agreement forms the contractual relationship between CDK and third-party vendor partners and sets out their respective rights and obligations. (*Id.* ¶ 44.) This Agreement contains information that CDK considers to be highly confidential and proprietary. (*Id.*) It contains information that has economic value to CDK's competitors in the DMS space as well as other third parties, including new car manufacturers and application providers. (*Id.*) If CDK's competitors or other third parties were to obtain this Agreement, they could use knowledge of the terms and conditions of CDKs contractual relationship with its vendor partners to harm CDK's competitive standing by offering more favorable terms and conditions to CDK's dealer customers and/or third party partners. (*Id.*). The information in the Agreement is not generally known by others, CDK has consistently treated the Third Party Access Agreement as confidential and proprietary, and the Third Party Access Agreement itself (at Paragraph 10) provides that its terms shall be considered confidential and not subject to disclosure. (*Id.*) The document is not publicly available on CDK's website. (*Id.*)

### The Reynolds Master Agreement and Reynolds Customer Guide

Reynolds licenses its DMS to its dealer customers under a set of terms and conditions that are designed to protect the functional integrity and security of that system; to protect Reynolds' valuable intellectual property rights; and to meet Reynolds' contractual obligations to third parties. (Hall Decl. ¶ 15.) Every Reynolds dealer customer that licenses a DMS from Reynolds signs the Reynolds Master Agreement and agrees to the terms of the

Reynolds Customer Guide. (*Id.*) These two documents, along with certain other documents identified in the Master Agreement, form the contractual relationship between Reynolds and its new car dealer customers. (*Id.* ¶ 48.)

Reynolds considers the Master Agreement and Customer Guide to be highly confidential and proprietary. (*Id.*) These documents contains information that has economic value to Reynolds' competitors in the DMS space as well as other third parties, including new car manufacturers and application providers. (*Id.*) If Reynolds' competitors were to obtain these documents, they could use knowledge of the terms and conditions of Reynolds' contractual relationship with its dealers to harm Reynolds' competitive standing by offering more favorable terms and conditions to Reynolds' dealer customers. (*Id.*). The information in these documents is not generally known by others outside Reynolds and is not readily ascertainable by proper means. (*Id.* ¶ 49.) Within and without the company, Reynolds consistently has treated the Master Agreement and the Customer Guide as confidential and proprietary. (*Id.*; *see also supra* note 1.) These documents are not publicly available on Reynolds' website, and they each contain legends (on every page) indicating that the documents are "Confidential and Proprietary Information of" Reynolds. (Hall Decl. ¶ 49.) The cover page of the Customer Guide states that it and its contents "may not be reproduced in any form or disclosed in any manner to anyone" other than the dealer and the dealer's employees without the express permission of Reynolds. (*Id.*). In other pending litigation involving Reynolds and its DMS, Reynolds has designated these documents as "confidential" or "highly confidential" under stipulated protective orders, and when the documents needed to be filed with the Court, Reynolds has filed them under seal. *See In re Dealer Mgmt. Sys. Antitrust Litig.*, MDL No. 2817 (No. 1:18-cv-00864), Dkt. 253 (Motion for Leave to file Under Seal) (filed July 18, 2018). Finally, Reynolds' dealer customers have agreed to maintain the confidentiality of these documents. (Hall Decl. ¶ 49.)

Unredacted Crutchfield Declaration

The Crutchfield Declaration is filed in support of the motion for preliminary injunction. In the publicly filed version, Plaintiffs redacted Paragraph 33. That paragraph describes the persistent and aggressive cyber security attacks that take place against CDK and other networks in the auto retail environment. (Crutchfield Decl. ¶ 45.) The information is competitively sensitive and confidential, and CDK could suffer harm if the information were publicly disclosed. (*Id.*) The information relates to the methods by which CDK detects cyber attacks and maintains the cyber security of its systems. (*Id.*) The information could be used by hackers to attack CDK's system. (*Id.*)

## II. PLAINTIFFS HAVE ESTABLISHED COMPELLING REASONS TO FILE THESE DOCUMENTS UNDER SEAL

The Court should allow Plaintiffs to file the unredacted Crutchfield Declaration, the CDK Master Services Agreement, the CDK Third Party Access Agreement, the Reynolds Master Agreement, and the Reynolds Customer Guide under seal. Plaintiffs agree that because their Motion for Preliminary Injunction is "more than tangentially related" to the underlying cause of action, the "compelling reasons" standard applies to this Motion to Seal (rather than the "good cause" standard traditionally applied to non-dispositive motions). *See Ctr. for Auto Safety v. Chrysler Group, LLC*, 809 F.3d 1092, 1101-02 (9th Cir. 2016) (clarifying that labels—"dispositive" or "non-dispositive"—do not determine the applicable standard for sealing court records; "compelling reasons" standard applied with respect to preliminary injunction motion that was more than tangentially related to merits of the case); *Johnson v. Bank of Am. NA*, 2017 WL 9988653, at *1 (D. Ariz. May 30, 2017) ("*Chrysler* made clear that where the material [to be sealed] is attached to a motion that is 'more than tangentially related to the merits of a case,' the compelling reasons standard shall continue to apply"). Plaintiffs must show compelling reasons, supported by specific factual findings, to overcome the presumption of access to court records. *See Kamakana v. City & Cty. of Honolulu*, 447 F.3d 1172, 1178-79 (9th Cir. 2006) (discussing standard). What constitutes

"compelling reasons" is left to the "'sound discretion of the trial court.'" *See MD Helicopters Inc. v. United States*, 2019 WL 2415285, at *2 (D. Ariz. June 7, 2019) (citation omitted).

Here, compelling reasons exist for allowing Plaintiffs to file the aforementioned documents under seal.  With respect to the contractual documents between Plaintiffs and their dealer customers and third parties—CDK Master Services Agreement, CDK Third Party Access Agreement, Reynolds Master Agreement, Reynolds Customer Guide—Plaintiffs have demonstrated that the terms of these documents are competitively sensitive and could be used to disadvantage CDK and Reynolds vis-à-vis their competitors (including one another).  (Crutchfield Decl. ¶¶ 43-45; Hall Decl. ¶¶ 48-50).  Courts have found compelling reasons to seal to "prevent information from being used 'as sources of business information that might harm a litigant's competitive standing.'"[2]  *DRK Photo v. The McGraw-Hill Cos.*, 2014 WL 2584816, at *2-3 (D. Ariz. June 10, 2014) (citation omitted) (granting motion to seal confidential business process management documents where movant provided specific facts demonstrating the harm it would suffer from disclosure of the information); *see also Burk v. State Farm Fire & Cas. Ins. Co.*, 2017 WL 11238025, at *2 (granting motion to seal where movant established that "other competing insurance firms will become familiar with how State Farm conducts its business and may attempt to simulate and co-op State Farm's proprietary practices"); *Tohono O'odham Nation v. Ducey*, 130 F. Supp. 3d 1301, 1320 (D. Ariz. 2015) (granting motion to seal where movant could suffer "competitive harm" if information were revealed); *cf. Neely v. Nat'l Cart Co.*, 2019 WL 3543623, at *4 (D. Ariz. Aug. 5, 2019) (finding compelling reasons for sealing portions of deposition transcript that "include information about Wal-Mart's business dealings").

---

[2] Plaintiffs also have established that they take affirmative steps to safeguard the confidentiality of this information. (Crutchfield Decl. ¶¶ 43-44; Hall Decl., ¶ 49.) That factor also supports sealing. *See Burk*, 2017 WL 11238025, at *2; *DRK Photo*, 2014 WL 2584816, at *2-3.

With respect to the unredacted Crutchfield Declaration, CDK has demonstrated that Paragraph 33 (redacted in the publicly filed version) describes the persistent and aggressive cyber security attacks that take place against CDK and other networks in the auto retail environment. (Crutchfield Decl., ¶ 45.) The information is competitively sensitive and confidential, and CDK could suffer harm if the information were publicly disclosed. (*Id.*) Specifically, the information could be used by hackers to attack CDK's system. (*Id.*) The disclosure of technical information that could harm a party is a sufficiently compelling reason for sealing part of a court record. *See Smilovits v. First Solar Inc.*, 119 F. Supp. 3d 978, 1010 (D. Ariz. 2015) (granting motion to seal "technical information that could result in unwarranted injury to [movant] if disclosed").

## III.    CONCLUSION

For all of the foregoing reasons, Plaintiffs request that the Court enter an order allowing CDK to file the unredacted Crutchfield Declaration, the CDK Master Services Agreement, and the CDK Third Party Access Agreement under seal and allowing Reynolds to file the Reynolds Master Agreement and the Reynolds Customer Guide under seal. A proposed form of order is lodged herewith.

DATED this 23rd day of August, 2019.

> QUARLES & BRADY LLP
> Renaissance One
> Two North Central Avenue
> Phoenix, AZ 85004-2391
>
> By */s/ Brian A. Howie*
>      Brian A. Howie
>      Lauren Elliott Stine
>
> *Attorneys for Plaintiffs*
>
> SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
> 2099 Pennsylvania Ave., NW, Ste. 100
> Washington, DC 20006, 201-747-1900
> Thomas J. Dillickrath* (DC 483710)
> TDillickrath@sheppardmullin.com

| | |
|---|---|
| 1 | Four Embarcadero Center, 17th Floor |
| 2 | San Francisco, CA 94111, 415-434-9100<br>Amar S. Naik* (CA 307208) |
| 3 | ANaik@sheppardmullin.com<br>Molly C. Lorenzi* (CA 315147) |
| 4 | MLorenzi@sheppardmullin.com |
| 5 | GIBBS & BRUNS LLP<br>1100 Louisiana, Ste. 5300 |
| 6 | Houston, TX 77002, 713-650-8805<br>Aundrea K. Gulley* (TX 24034468) |
| 7 | agulley@gibbsbruns.com<br>Denise Drake* (TX 24092358) |
| 8 | DDrake@gibbsbruns.com |
| 9 | *Attorneys for The Reynolds and Reynolds Company* |
| 10 | |
| 11 | MAYER BROWN LLP<br>71 S. Wacker Drive |
| 12 | Chicago, IL 60606<br>312-782-0600 |
| 13 | Britt M. Miller** (IL 6256398)<br>BMiller@mayerbrown.com |
| 14 | Michael A. Scodro** (IL 6243845)<br>MScodro@mayerbrown.com |
| 15 | Brett E. Legner** (IL 6256268)<br>BLegner@mayerbrown.com |
| 16 | |
| 17 | 1999 K Street, NW<br>Washington, DC 20006 |
| 18 | 202-263-3000<br>Mark W. Ryan** (DC 359098) |
| 19 | mryan@mayerbrown.com |
| 20 | *Attorneys for CDK Global, LLC* |
| 21 | *Admitted Pro Hac Vice<br>**Pro Hac Vice Forthcoming |
| 22 | |
| 23 | |
| 24 | |
| 25 | |
| 26 | |

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 23, 2019, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to all counsel identified on the Court-Generated Notice of Electronic Filing.

*/s/ Maria Marotta*