# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| CDK Global LLC, et al., | No. CV-19-04849-PHX-GMS |
| Plaintiffs, | **ORDER REGARDING FINAL PREHEARING CONFERENCE** |
| v. | |
| Mark Brnovich, et al., | |
| Defendants, | |
| and | |
| Arizona Automobile Dealers Association, | |
| Intervenor Defendant. | |

This matter has previously been set for a telephonic oral argument on May 8, 2020 at 10:30 a.m. (Phoenix time) (Doc. 82) on the pending Motions for Summary Judgment (Docs. 39 and 40).

**The Court is inclined to rule as follows on the Motions:**

1. <u>CFAA</u>: Dismiss; the cases in Plaintiffs' Response in Opposition involve users attempting to access information from operators' sites after those users have been denied, or never received, access rather than cases in which state law explicitly authorized access. The CFAA does not vest the sole right to authorize access to information owned by third-parties and contained in a computer system to the owner of the computer system. It relies on other law to define what authorized access is.

2. <u>Copyright Act</u>: Dismiss; CDK has not alleged any copyrighted material, only

*copyrightable* material. Thus, the Copyright Act cannot preempt the Dealer Law as it applies to persons that do not have copyright protection. Therefore, Plaintiffs' facial challenge fails.

    3.    <u>DMCA</u>: Dismiss for the same reasons set forth above. Further, the DMCA is concerned with preventing unauthorized access to copyrighted works by "pirates who aim to destroy the value of American intellectual property"; like the CFAA, it does not address the issue of state statutes *requiring* those who hold dealer protected data to provide access to it.

    4.    <u>DTSA</u>: Dismiss; Plaintiffs have cited nothing in the DTSA or its legislative history indicating that Congress intended this statute to prevent states from authorizing lawful transfers of otherwise protected information.

    5.    <u>GLBA</u>: Dismiss; Plaintiffs have not indicated any specific requirement imposed upon them by the GLBA that is inconsistent with the state statute. Plaintiffs' theory assumes that dealers are incapable of complying with their own GLBA obligations if they retain control of their data, but whether or not the dealers comply with the GLBA hardly seems to be a claim for which Plaintiffs have standing.

    6.    <u>Due Process</u>: Dismiss, except perhaps as to Plaintiffs' contention that they do not know "[w]hich of their restrictions on access by authorized integrators are 'unreasonable.'" (Doc. 1 at 53.)

    7.    <u>Takings</u>: Deny as it pertains to contracts that existed at the time that the legislation became effective; Plaintiffs plausibly allege the Dealer Law "will have a significant economic impact on Plaintiffs and substantially interfere with their reasonable investment-backed expectations" (Doc. 50 at 31), particularly given that the takings inquiry is fact dependent.

    8.    <u>Contracts Clause</u>: Deny; Plaintiffs have adequately pled that the Dealer Law would substantially impair their existing contracts and a determination of whether the Dealer Law is drawn in an "appropriate" and "reasonable" way to advance "a significant and legitimate public purpose" is not appropriate at this stage of the proceedings where the

record is not fully developed.

9. <u>Dormant Commerce Clause</u>: Dismiss; Plaintiffs have made no plausible allegation that the Dealer Law is discriminatory in favor of Arizona commerce or that it regulates activities that are "inherently national."

10. <u>First Amendment</u>: Deny; viewing the facts in the light most favorable to Plaintiffs, the Dealer Law requires Plaintiffs to serve more than a "sole[ly] . . . transmittal role" (Doc. 40 at 12) because Plaintiffs have "organize[d] information belonging to dealers and others in their proprietary DMSs" and the law requires them to "share that information, as they have organized it, with third parties" (Doc. 50 at 36). Although the Dealer Law is content-neutral and unrelated to the suppression of free expression, the record is not sufficiently developed to determine whether the Dealer Law serves a substantial governmental interest and is sufficiently narrowly tailored.

**The parties should be prepared to address the following issues:**

1. Whether, given that CDK has not asserted that its material is copyrighted, merely "copyrightable," it lacks standing to bring a claim under the Copyright Act, which provides protections for "the owner of copyright under this title," 17 U.S.C.A. § 106, and the DMCA, which prohibits the "circumvention" of "technological measure[s] that effectively control[] access to a [copyrighted] work." 17 U.S.C. § 1201.

2. Whether the preemption claim can stand if CDK does not hold a copyright to any of its DMS software.

3. Which of the components of Reynolds' DMS are currently covered by copyright and what, according to Reynolds, the copyright prevents dealers or their authorized agents from doing under the Dealer Law.

4. Whether, accepting Plaintiffs' allegations as true, the requirement under the Dealer Act prohibiting Plaintiffs from "[i]mposing any fee or other restriction on the dealer or an authorized integrator . . . for writing data to a dealer data system," Ariz. Rev. Stat. Ann. § 28-4653, violates the Copyright Act, which grants a copyright owner the "exclusive right[]" to "prepare derivative works based upon" the owner's "copyrighted work," 17

U.S.C. § 106(1)–(3).

5. The degree to which the criminal nature of the Dealer Law renders the cases underlying Defendants' argument that "courts have repeatedly made clear that the terms 'unreasonable' and 'reasonable' are not vague as a matter of law" (Doc. 40 at 13) unpersuasive.

6. Whether the organization of material is sufficient to merit First Amendment protection.

7. Whether Plaintiffs must write software to fulfill the purposes of the Act and whether that can be determined absent factual development.

8. Whether intermediate scrutiny is the appropriate test to apply to that part of the Dealer Act that may require the Plaintiffs to write software to comply with the Act.

The Parties shall have thirty minutes per side.

Dated this 5th day of May, 2020.

_____
G. Murray Snow
Chief United States District Judge