Mary O'Grady, 011434
Jeffrey B. Molinar, 018512
William D. Furnish, 028725
Emma Cone-Roddy, 034285
OSBORN MALEDON, P.A.
2929 North Central Avenue, 21st Floor
Phoenix, Arizona 85012-2793
(602) 640-9000
mogrady@omlaw.com
jmolinar@omlaw.com
wfurnish@omlaw.com
econe-roddy@omlaw.com

Brunn (Beau) W. Roysden III, 028698
Rusty D. Crandell, 026224
OFFICE OF THE ARIZONA
    ATTORNEY GENERAL
2005 North Central Avenue
Phoenix, Arizona 85004
(620) 542-3333
beau.roysden@azag.gov
rusty.crandell@azag.gov

*Attorneys for Defendant Arizona*
*Attorney General Mark Brnovich*

John C. Norling, 013986
Jeffrey D. Gardner, 021783
Jimmie W. Pursell, Jr., 19957
JENNINGS, STROUSS &
    SALMON, P.L.C.
One East Washington Street, Suite 1900
Phoenix, Arizona 85004-2554
Telephone: (602) 262-5911
jnorling@jsslaw.com
jgardner@jsslaw.com
jpursell@jsslaw.com

Derek T. Ho (*Pro Hac Vice*)
Daniel V. Dorris (*Pro Hac Vice*)
Joshua Hafenbrack (*Pro Hac Vice*)
Jayme L. Weber, 032608
KELLOGG, HANSEN, TODD,
    FIGEL & FREDERICK, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
Telephone:  (202) 326-7900
dho@kellogghansen.com
ddorris@kellogghansen.com
jhafenbrack@kellogghansen.com
jweber@kellogghansen.com

*Attorneys for Intervenor-Defendant*
*Arizona Automobile Dealers Association*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| CDK Global, LLC, a limited liability company, and The Reynolds and Reynolds Company, a corporation,<br><br>Plaintiffs,<br><br>vs.<br><br>Mark Brnovich, Attorney General of the State of Arizona,<br><br>Defendant,<br><br>Arizona Automobile Dealers Association,<br><br>Intervenor-Defendant. | No. CV-19 -04849-PHX-GMS<br><br>**DEFENDANT'S AND INTERVENOR-DEFENDANT ARIZONA AUTOMOBILE DEALERS ASSOCIATION'S RULE 12(B)(6) MOTION TO DISMISS THE FIRST AMENDED COMPLAINT; AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT** |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES........................................................................................... ii

INTRODUCTION ..................................................................................................... 1

FACTUAL AND PROCEDURAL BACKGROUND ................................................. 2

LEGAL STANDARD .............................................................................................. 4

ARGUMENT .......................................................................................................... 4

I.    Requiring Plaintiffs To Provide Access To DMS Data Does Not Implicate Any First Amendment Interest ................................................................. 5

    A.    The Court's Prior Holding That The Dealer Law Regulates Conduct, Not Speech, Continues To Apply ............................................................. 5

    B.    Plaintiffs' "Editorial Discretion" Does Not Give Rise To Any First Amendment Rights ..................................................................... 7

II.    Any Requirement That Plaintiffs Write Code Or API Specifications Does Not Violate The First Amendment ......................................................... 9

CONCLUSION ....................................................................................................... 10

1

# TABLE OF AUTHORITIES

2

Page(s)

**CASES**

3

*Aharonian v. Gonzales*, 2006 WL 13067 (N.D. Cal. Jan. 3, 2006)..............................9

4

*Airbnb, Inc. v. City & Cty. of San Francisco*,
    217 F. Supp. 3d 1066 (N.D. Cal. 2016) ........................................................ 6-7

5

*Arcara v. Cloud Books, Inc.*, 478 U.S. 697 (1986) ....................................................6

6

*Arkansas v. Educational Television Comm'n v. Forbes*, 523 U.S. 666 (1998) ...........8

7

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .......................................................................4

8

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) .................................................4

9

*European Connections & Tours, Inc. v. Gonzalez*,
    480 F. Supp. 2d 1355 (N.D. Ga. 2007) ..................................................................8

10

11

*Expressions Hair Design v. Schneiderman*, 137 S. Ct. 1144 (2017) ...........................7

12

*Int'l Franchise Ass'n, Inc. v. City of Seattle*, 803 F.3d 389 (9th Cir. 2015),
    *cert. denied*, 136 S. Ct. 1838 (2016) ...................................................................7

13

*Ohralik v. Ohio State Bar Ass'n*, 436 U.S. 447 (1978) ..............................................8

14

*Restaurant Law Ctr. v. City of New York*,
    360 F. Supp. 3d 192 (S.D.N.Y. 2019) ....................................................................8

15

16

*Rumsfeld v. Forum for Academic & Institutional Rights, Inc.*,
    547 U.S. 47 (2006) .....................................................................................5, 6, 10

17

*Sorrell v. IMS Health, Inc.*, 564 U.S. 552 (2011).......................................................5

18

*Tai v. Minka Lighting, Inc.*, 2017 WL 568519 (D. Ariz. Feb. 13, 2017)....................4

19

*Universal City Studios, Inc. v. Corley*, 273 F.3d 429 (2d Cir. 2001)..........................9

20

*Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442 (2008) ..............4

21

22

**STATUTES**

23

A.R.S. §§ 28-4651 *et seq*...................................................................... *passim*

24

25

26

27

28

**INTRODUCTION**

Plaintiffs CDK Global, LLC's ("CDK") and The Reynolds and Reynolds Company's ("Reynolds") First Amended Complaint does not remedy the deficiencies that the Court previously identified in their prior complaint. Plaintiffs' First Amendment claim should now be dismissed with prejudice.

As this Court previously held, the Dealer Data Security Law, A.R.S. §§ 28-4651 to 28-4655 (the "Dealer Law" or the "Law") regulates conduct, not speech. It requires retail automotive software vendors, including Plaintiffs, to allow access to data on the Dealer Management System ("DMS") by authorized data integrators. Because the Law regulates what Plaintiffs must *do*, not what they must *say*, the Law does not implicate Plaintiffs' First Amendment rights.

None of Plaintiffs' new allegations addresses this fundamental flaw in their First Amendment claim. They now allege that they exercise "editorial discretion" regarding the data included in the DMS and selectively choose which parties have access to which data. These arguments have been considered and rejected by this Court. The Law does not regulate Plaintiffs' "editorial" or "organizational" decisions regarding the data in the DMS, and in any case, regulation of the "organization" of data to be included in a database does not implicate any cognizable First Amendment interest. And while the Law does regulate the data that data integrators must be given access to, that is regulation of conduct – the data to which Plaintiffs must provide access – not speech.

Nor have Plaintiffs provided any new allegations that would alter this Court's prior holding that any code they must write to comply with the Law would not be expressive. Any code Plaintiffs write to comply with the Law will be mere instructions to be interpreted by their own DMSs and need not be shared with third parties. As this Court previously held, this is not entitled to any First Amendment protection.

Finally, to the extent that Plaintiffs must develop application programming interface ("API") specifications to permit third parties to make requests to the API for

data stored on the DMS, those specifications are merely speech incidental to the regulation of conduct. The creation of those specifications does not trigger First Amendment scrutiny.

## FACTUAL AND PROCEDURAL BACKGROUND

1.      This case concerns Plaintiffs' DMSs, which are enterprise software automobile dealers use to run their businesses. *See* Am. Compl. ¶¶ 33-36. Each Plaintiff's DMS includes a database where dealers store the data generated in their business. *Id.* ¶¶ 40, 45. Plaintiffs also allege that the DMS database includes data from the DMS company, original equipment manufacturers ("OEMs"), and other third parties. *Id.* ¶¶ 41, 45. In addition to the DMS itself, dealers use other software applications that require access to the data stored on the DMS. *Id.* ¶ 36. The Arizona Legislature passed the Dealer Data Security Law to give dealers control over who has access to the data they store on the DMS.

2.      The Dealer Data Security Law prohibits third parties – including "dealer data vendors," which includes but is not limited to DMS providers – from "placing an unreasonable restriction on integration by an authorized integrator or other third party that the dealer wishes to be an authorized integrator." A.R.S. § 28-4653(A)(3)(b). The Law further requires those "dealer data vendors" to "[a]dopt and make available a standardized framework for the exchange, integration and sharing of data from dealer data systems with authorized integrators and the retrieval of data by authorized integrators." *Id.* § 28-4654(A)(1).

"Protected dealer data" is defined as "personal, financial or other data relating to a consumer that a consumer provides to a dealer or that a dealer otherwise obtains and that is stored in the dealer's dealer data system," *id.* § 28-4651(7)(a), "motor vehicle diagnostic data that is stored in a dealer data system," *id.* § 28-4651(7)(b), and "other data that relates to a dealer's business operations in the dealer's dealer data system," *id.* § 28-4651(7)(c).

2

**3.**     Plaintiffs' original complaint alleged that the Dealer Law was preempted by five federal statutes and violated five provisions of the U.S. Constitution.  After briefing and argument, this Court dismissed seven of Plaintiffs' claims, with leave to amend only their First Amendment claim.  *See* Dkts. 39, 40, 50, 53, 54, 86, 91.

With respect to the First Amendment, Plaintiffs' original complaint alleged that the Law infringed their First Amendment rights by compelling them (1) "to engage in an exchange of information with third parties" and (2) "to draft computer code" facilitating dealer-authorized third-party access to their DMSs.  Dkt. 1 ¶¶ 251-252. The Court dismissed these claims.  *See* Dkt. 91 at 20-22.

The Court rejected Plaintiffs' claim that the Law impermissibly required them to exchange information with third parties for two reasons.  *First*, the Court held that the law regulated only conduct – who must be allowed to access data on the DMS – and did not regulate speech.  *See id.* at 20.  *Second*, the Court rejected the notion that Plaintiffs' "organizational decisions" regarding data in the DMS were subject to First Amendment protection.  *See id.*

The Court also rejected Plaintiffs' argument that compelling them to write code violated the First Amendment.  As the Court noted, any code developed to facilitate access to data as required by the Law would merely communicate "to the computer" (not a user), and "tell[ing] a computer how to function" has "no . . . expressive purpose."  *Id.* at 21-22.

**4.**     Following this Court's Order granting the motion to dismiss Plaintiffs' First Amendment claim – and a two-day preliminary injunction hearing held June 2-3, 2020 – Plaintiffs filed an amended complaint repleading their First Amendment claim (now their Fourth Claim for Relief).  The amended complaint alleges that CDK and Reynolds "exercise[] editorial discretion in determining the types of information to include in the[ir] DMS[s]."  Am. Compl. ¶¶ 40, 45.  They claim to "have selected, and in some instances created, a wide variety of valuable information for their DMSs, including price guides, rebate, incentive, and warranty information, and marketing

3

1    tools." *Id.* ¶ 190.  They also allege that they "exercise editorial discretion in selecting

2    and presenting information to third parties that integrate with Plaintiffs' DMSs." *Id.*

3    ¶ 191.  Finally, they allege that, "[t]o comply with the DMS [L]aw, Plaintiffs must

4    write computer code to interact with 'authorized integrators,' who will be the users of

5    Plaintiffs' code under the DMS Law," *id.* ¶ 195; and "Plaintiffs are necessarily

6    compelled to write and publish interface specifications and associated documentation

7    that define and describe the [standardized] framework" that authorized integrators will

8    use to access the data, *id.* ¶ 199 (citing A.R.S. § 28-4654).

9                                **LEGAL STANDARD**

10         "To survive a motion to dismiss, a complaint must contain sufficient factual

11   matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

12   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*,

13   550 U.S. 544, 570 (2007)).  Although courts accept the complaint's factual allegations

14   as true, courts "'are not bound to accept as true a legal conclusion couched as a factual

15   allegation.'"  *Id.* (quoting *Twombly*, 550 U.S. at 555).  When a plaintiff is granted leave

16   to amend, "[t]he amended complaint should not contain legal arguments or otherwise

17   read like a Rule 56 summary judgment motion and statement of facts."  *Tai v. Minka*

18   *Lighting, Inc.*, 2017 WL 568519, at *5 (D. Ariz. Feb. 13, 2017).  Facial challenges to

19   the constitutionality of a statute "are disfavored for several reasons," including that

20   they "often rest on speculation" and "run contrary to the fundamental principle of

21   judicial restraint" that courts should not construe constitutional law more broadly than

22   the facts of the particular case require.  *Wash. State Grange v. Wash. State Republican*

23   *Party*, 552 U.S. 442, 450 (2008).

24                                  **ARGUMENT**

25         Plaintiffs' amended complaint does not remedy any of the deficiencies that the

26   Court identified in its prior Order.  *First*, Plaintiffs' claim that the law violates the First

27   Amendment by requiring them to give access to data on the DMS to outside parties

28   still suffers from the flaw that this is regulation of conduct, not speech.  Their new

                                        4

allegations regarding "editorial discretion" do not change the result because, as this Court has already held, mere "organizational decisions" are not subject to First Amendment protection. *Second*, Plaintiffs have not made any new factual allegations regarding the code that they claim they must develop in order to comply with the Law. Accordingly, their claim that being compelled to create additional software functionality violates the First Amendment must be dismissed again. Plaintiffs' new allegation that they may need to develop API specifications – the equivalent of instruction manuals – also fails. Any requirement to develop these manuals is incidental to the regulation of conduct (the development of an API), and therefore, does not implicate the First Amendment.

**I.    Requiring Plaintiffs To Provide Access To DMS Data Does Not Implicate Any First Amendment Interest**

**A.    The Court's Prior Holding That The Dealer Law Regulates Conduct, Not Speech, Continues To Apply**

This Court previously held that the Dealer Law's requirement that DMS companies provide access to Protected Dealer Data to certain outside parties is a conduct regulation not subject to First Amendment scrutiny. As the Court observed, "the purpose of the Dealer Law . . . is merely to facilitate the sharing of the otherwise unprotected underlying information in the DMS." Dkt. 91 at 21-22. The Law does not implicate a First Amendment right "not to 'speak'"; the law only affects Plaintiffs' ability "to protect information stored within the DMS from access by any others." *Id.* at 20.

That holding correctly adhered to Supreme Court precedent. "[R]estrictions on protected expression are distinct from restrictions on economic activity or, more generally, on nonexpressive conduct." *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 567 (2011). "[T]he First Amendment does not prevent restrictions directed at commerce or conduct from imposing incidental burdens on speech." *Id.* Accordingly, the Supreme Court has "extended First Amendment protection only to conduct that is inherently expressive." *Rumsfeld v. Forum for Acad. and Institutional Rights, Inc.*,

547 U.S. 47, 66 (2006); *see also Arcara v. Cloud Books, Inc.*, 478 U.S. 697, 708 (1986) (O'Connor, J., concurring) ("Any other conclusion would lead to the absurd result that any government action that had some conceivable speech-inhibiting consequences . . . would require analysis under the First Amendment.").

*Rumsfeld* is instructive. There, the Supreme Court rejected a First Amendment challenge to a law that prohibited colleges from restricting the access of military recruiters on campus. *See* 547 U.S. at 51. The Court held that the First Amendment did not apply because the law "regulates conduct, not speech," as "[i]t affects what law schools must *do* – afford equal access to military recruiters – not what they may or may not *say*." *Id.* at 60 (emphasis in original). The same is true here: the Dealer Law only requires Plaintiffs to provide access to Protected Dealer Data stored on the DMS. Plaintiffs remain free to say whatever they want, or nothing at all.[1]

Plaintiffs' new allegations do not remedy this flaw in their First Amendment claim. Plaintiffs' argument remains that they cannot be compelled to provide *access* to Protected Dealer Data to certain parties. *See* Am Comp. ¶ 190 ("The DMS Law abridges the freedom of speech by compelling Plaintiffs to engage in an exchange of information with third parties."), *id.* ¶ 192 ("[T]he DMS law compels Plaintiffs to convey information to integrators that Plaintiffs would otherwise exclude from such communications."). But the Court has already correctly rejected that argument because regulation of data access is a regulation of conduct, not speech, and does not implicate the First Amendment. *See* Dkt. 91 at 20-22; *see also Airbnb, Inc. v. City & Cty. of San Francisco*, 217 F. Supp. 3d 1066, 1078 (N.D. Cal. 2016) ("[T]he Ordinance here enacts restrictions directed at commerce or conduct, namely the booking of rentals for

---

[1] *Rumsfeld* also forecloses Plaintiffs' argument that the Dealer Law "compels speech in support of a policy position taken by the Arizona legislature." Am. Compl. ¶ 200. Merely complying with the Dealer Law does not require them to support any "policy position." They remain free to engage in any speech about the Dealer Law, including criticizing the Law or seeking its repeal. *See Rumsfeld*, 547 U.S. at 65 ("Nothing about recruiting suggests that law schools agree with any speech by recruiters, and nothing in the [law] restricts what the law schools may say about the military's policies.").

1    unregistered units.  To the limited extent the Ordinance might be said to affect speech,

2    the impact or burden is purely incidental . . . [and] the First Amendment is not

3    implicated at all.") (internal quotation marks and citations omitted); *see also*

4    *Expressions Hair Design v. Schneiderman*, 137 S. Ct. 1144, 1150-51 (2017) (a price

5    regulation's "effect on speech would be only incidental to its primary effect on

6    conduct" even if compliance would require "written or oral communications"); *Int'l*

7    *Franchise Ass'n, Inc. v. City of Seattle*, 803 F.3d 389, 409 (9th Cir. 2015), *cert. denied*,

8    136 S. Ct. 1838 (2016) ("[T]he ordinance applies to businesses that have adopted a

9    particular business model, not to any message the businesses express.").

10   **B.    Plaintiffs' "Editorial Discretion" Does Not Give Rise To Any First
11          Amendment Rights**

12          Plaintiffs' allegations regarding their exercise of "editorial discretion" have

13   already been considered and rejected by the Court.  Plaintiffs previously argued that

14   the "First Amendment protects the organization of material" in the DMS.  Dkt. 91 at

15   20.  This Court correctly rejected that argument because "Plaintiffs' organizational

16   decisions do *not* result in a decision by Plaintiff[s] as to what speech to disseminate,"

17   and as the Court noted, Plaintiffs had not "provided . . . relevant authority to support

18   the claim that organization of otherwise unprotected information is subject to *First*

19   *Amendment* protection."  *Id.*

20          Plaintiffs repackage these previously-rejected arguments as factual allegations

21   in their amended complaint.  They allege that they exercise "editorial discretion in the

22   selection, organization, and presentation" of the data in the DMS, Am. Compl. ¶¶ 40,

23   45, 190, and that some of the data in the DMS has not been "enter[ed]" by the dealer,

24   *id.* ¶ 190.  The Court has already concluded that these allegations do not create a First

25   Amendment issue because regulation of the "organization" of data in the DMS does

26   not implicate Plaintiffs' speech rights.  *See* Dkt. 91 at 20.  In addition, even if Plaintiffs

27   had a First Amendment interest in how they organize the data on their DMS, the Law

28   imposes no limitations on Plaintiffs' "selection, organization, [or] presentation" of the

7

data in the DMS, and Plaintiffs do not allege any facts to the contrary.  Am. Compl. ¶ 190.

Plaintiffs' "editorial discretion" allegations echo the Supreme Court's statement in *Arkansas Educational Television Commission v. Forbes*, 523 U.S. 666 (1998), that, "[w]hen a public broadcaster exercises editorial discretion in the selection and presentation of its programming, it engages in speech activity."  *Id.* at 674.  But as this Court explained, *Forbes* involved very different circumstances.  *See* Dkt. 91 at 20. *Forbes* concerned whether a public broadcaster could, consistent with a candidate's First Amendment rights, exclude the candidate from a public debate – a decision that influenced the broadcaster's "speech" – its programming.  *See id.* at 672-74.  Unlike the broadcaster in *Forbes*, Plaintiffs have not established that they have any First Amendment interest in the data they transmit to third parties.  *See* Dkt. 91 at 21; *see also Rest. Law Ctr. v. City of New York*, 360 F. Supp. 3d 192, 212 (S.D.N.Y. 2019) (finding "the employers' mere act of sending a check to an employee's designated non-profit recipient is not speech" because "they have no discretion as to the recipient of their employees' donations – they merely follow their employees' instructions").

"Numerous examples could be cited of communications that are regulated without offending the First Amendment, such as the exchange of information about securities, corporate proxy statements, the exchange of price and production information among competitors, and employers' threats of retaliation for the labor activities of employees."  *Ohralik v. Ohio State Bar Ass'n*, 436 U.S. 447, 456 (1978) (internal citations omitted); *see also European Connections & Tours, Inc. v. Gonzalez*, 480 F. Supp. 2d 1355, 1369 (N.D. Ga. 2007) (rejecting First Amendment challenge to law requiring disclosure of "background data from [plaintiff's] male clients to [its] female clients as a prerequisite to releasing the women's personal information").  Here, Plaintiffs fail to allege any way in which the Law affects their protected speech.  *See* Dkt. 91 at 20.

8

## II.    Any Requirement That Plaintiffs Write Code Or API Specifications Does Not Violate The First Amendment

**A.**    Plaintiffs have included no allegations to address this Court's rejection of their argument that the Law violates the First Amendment by compelling them to implement certain software functionality.  This Court previously held that "any code Plaintiffs create pursuant to the Dealer Law only instructs a computer to provide access to unprotected information contained in Plaintiffs' DMSs," and thus, is not expressive. Dkt. 91 at 22.  This ruling correctly adhered to the principle that code may be protected speech if communicated to another person (for example, sending the source code to another programmer) but is "*never protected*" if the code is not communicated to any person and is merely used to instruct a computer.  *See id.* at 21 (emphasis added) (quoting *Universal City Studios, Inc. v Corley*, 273 F.3d 429, 449 (2d Cir. 2001)).

Plaintiffs now allege that they must write code that others will "interact with." Am. Compl. ¶ 195.  But they do not allege that the code itself will need to be transmitted to any other party, nor could they given undisputed testimony at the preliminary injunction hearing that it would be possible for Plaintiffs to implement an API without exposing their code to outside parties.  *See* Dkt. 119, Prelim. Inj. Hr'g Tr. (Day 2) 254:8-257:14.  This Court's holding therefore requires dismissal of Plaintiffs' theory that the First Amendment shields them from a regulation whose compliance may require them to create software functionality.[2]

**B.**    Plaintiffs allege that, in order to provide the "standardized framework," A.R.S. § 28-4654(A)(1), for data access as required by the Law, they will need "to write and publish interface specifications and associated documentation that define and describe the framework."  Am. Compl. ¶ 199.  This does not give rise to a First Amendment claim because the Law facially does not require Plaintiffs to create any

---

[2] Plaintiffs' amended complaint cites *Aharonian v. Gonzales*, 2006 WL 13067 (N.D. Cal. Jan. 3, 2006).  That case does not address whether laws requiring that certain software functionality be implemented violate the First Amendment.

documentation.  The Law requires Plaintiffs to develop a "standardized framework" – which is a regulation of conduct, not speech.  *See supra* pp. 5-7.  To the extent Plaintiffs must develop documentation for outside parties to use that standardized framework, that speech is incidental to the conduct being regulated and does not give rise to any First Amendment protection.

*Rumsfeld* is again on point.  The Supreme Court rejected the college's compelled-speech argument because the law was a "regulation of conduct" – providing access to military recruiters – even if the college would have to engage in certain speech to make that conduct possible (such as sending "scheduling e-mails" to alert students of the availability of the military recruiters).  547 U.S. at 62, 64-65, 70.  The Court reached that result because the law at issue in *Rumsfeld* did "not dictate the content of the speech at all" and it was "plainly incidental to the [law's] regulation of conduct."  *Id.* at 62.  So too here.  The Dealer Law does not regulate the content of any documentation that Plaintiffs create.

## CONCLUSION

The Court should dismiss with prejudice Claim Four of Plaintiffs' First Amended Complaint.

RESPECFULLY SUBMITTED this 20th day of July, 2020.

By */s/ Derek T. Ho*
Derek T. Ho*
Daniel V. Dorris*
Joshua Hafenbrack*
Jayme L. Weber, 032608
**KELLOGG, HANSEN, TODD,
  FIGEL & FREDERICK, P.L.L.C.**
1615 M Street, N.W., Suite 400
Washington, D.C. 20036

John C. Norling, 013986
Jeffrey D. Gardner, 021783
Jimmie W. Pursell, Jr., 19957
**JENNINGS, STROUSS &
  SALMON, P.L.C.**
One East Washington Street, Suite 1900
Phoenix, Arizona  85004-2554

*Attorneys for Intervenor-Defendant
Arizona Automobile Dealers Association*

*\* Pro Hac Vice*

MARK BRNOVICH,
ATTORNEY GENERAL

By */s/ Brunn (Beau) W. Roysden III* (w/ permission)
Brunn (Beau) W. Roysden III
Rusty D. Crandell
**OFFICE OF THE ARIZONA
  ATTORNEY GENERAL**
2005 North Central Avenue
Phoenix, AZ 85004

Mary O'Grady
Jeffrey B. Molinar
William D. Furnish
Emma Cone-Roddy
**OSBORN MALEDON, P.A.**
2929 North Central Avenue, 21st Floor
Phoenix, Arizona  85012-2793

*Attorneys for Defendant Arizona Attorney General
Mark Brnovich*

11