QUARLES & BRADY LLP
Firm State Bar No. 00443100
Renaissance One, Two N. Central
Phoenix, AZ 85004-2391, 602-229-5200
Brian A. Howie (AZ No. 026021)
Brian.Howie@quarles.com
Lauren E. Stine (AZ No. 025086)
Lauren.Stine@quarles.com
*Attorneys for Plaintiffs*

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
2099 Pennsylvania Ave., NW, Ste. 100
Washington, DC 20006, 201-747-1900
Thomas J. Dillickrath* (DC 483710)
TDillickrath@sheppardmullin.com
Jonathan R. DeFosse* (DC 482148)
jdefosse@sheppardmullin.com
Four Embarcadero Center, 17th Floor
San Francisco, CA 94111, 415-434-9100
Molly C. Lorenzi* (CA 315147)
MLorenzi@sheppardmullin.com

GIBBS & BRUNS LLP
1100 Louisiana, Ste. 5300
Houston, TX 77002, 713-650-8805
Aundrea K. Gulley* (TX 24034468)
agulley@gibbsbruns.com
Brice A. Wilkinson* (TX 24075281)
bwilkinson@gibbsbruns.com
Denise Drake* (TX 24092358)
DDrake@gibbsbruns.com
*Attorneys for The Reynolds and Reynolds Co.*

MAYER BROWN LLP
71 S. Wacker Drive
Chicago, IL 60606
312-782-0600
Britt M. Miller* (IL 6256398)
BMiller@mayerbrown.com
Michael A. Scodro* (IL 6243845)
MScodro@mayerbrown.com
Brett E. Legner* (IL 6256268)
BLegner@mayerbrown.com

1999 K Street, NW
Washington, DC 20006
202-263-3000
Mark W. Ryan* (DC 359098)
mryan@mayerbrown.com
*Attorneys for CDK Global, LLC*

*\*Admitted Pro Hac Vice*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| CDK Global, LLC, a limited liability company, and The Reynolds and Reynolds Company, a corporation,<br><br>Plaintiffs,<br><br>v.<br><br>Mark Brnovich, Attorney General of the State of Arizona,<br><br>Defendant. | Case No.: 2:19-cv-04849-GMS<br><br>**PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT [ECF 126]** |

## INTRODUCTION

On June 19, 2020, Plaintiffs filed their First Amended Complaint (the "FAC"), which plausibly alleges that (1) Plaintiffs have a protected speech interest in the information compiled in their computer systems because they exercise editorial discretion in creating and presenting those compilations; (2) the code Plaintiffs must draft to comply with the DMS Law contains expressive elements that are communicated to programmers and users; and (3) the DMS Law compels protected speech because it forces Plaintiffs to develop and publish standards (including expressive elements) for "open access integration" with their computer systems.

In response, Defendants first argue, in effect, that any amendment would be futile: in their world, the DMS Law can never violate the First Amendment because the Law "regulates conduct, not speech." But this cannot be true given that the DMS Law requires Plaintiffs to share and exchange information—in other words, engage in speech—with third-party integrators. As such, regulating speech is a fundamental focus of the law, not merely an "incidental" effect.

Defendants also attempt to end run and evade the allegations of the FAC by relying on numerous disputed assertions of fact that cannot be resolved at this stage of the proceedings. For example, Defendants argue that the DMS Law does not impact the editorial discretion that Plaintiffs exercise in creating and presenting their compilations of information. But the FAC alleges the opposite. Similarly, Defendants argue that code drafted under the DMS Law does not include expressive elements that are communicated to others. Again, the FAC alleges the opposite. Finally, Defendants ignore both the DMS Law and the FAC in arguing that publishing standards for "open access integration" is merely "incidental" to the Law. Of course, the DMS Law directly requires Plaintiffs to develop and provide such standards. Merely gainsaying the allegations of a well-pleaded complaint is not sufficient to meet the high bar for a motion to dismiss. Accordingly, Defendants' motion should be denied.

**ARGUMENT**

The First Amendment guarantees freedom from government compulsion of private speech. "Mandating speech that a speaker would not otherwise make necessarily alters the content of the speech" and thus demands "exacting First Amendment scrutiny." *Riley v. Nat'l Fed'n of the Blind of N. Carolina, Inc.*, 487 U.S. 781, 795, 798 (1988). That is because, "[w]hen speech is compelled…additional damage is done. In that situation, individuals are coerced into betraying their convictions. Forcing free and independent individuals to endorse ideas they find objectionable is always demeaning[.]" *Janus v. AFSCME*, 138 S. Ct. 2448, 2464 (2018); *see, e.g.*, *Agency for Int'l Development v. Alliance for Open Society Int'l*, 133 S. Ct. 2321, 2327 (2013) ("[I]t is…a basic First Amendment principle that 'freedom of speech prohibits the government from telling people what they must say.'"); *Knox v. SEIU*, 132 S. Ct. 2277, 2288 (2012) ("The government may not…compel the endorsement of ideas that it approves.").

Moreover, a content-based rule will fail unless government regulation of protected speech promotes a "compelling interest" and the government "chooses the least restrictive means to further the articulated interest." *Sable Commc'ns of Cal., Inc. v. F.C.C.*, 492 U.S. 115, 126 (1989). And even content-neutral regulations are unconstitutional unless they are "narrowly tailored to serve a significant government interest" and "leave open ample alternative channels for communication of the information." *Clark v. Community for Creative Non-Violence*, 468 U.S. 288, 293 (1984).

In the FAC, Plaintiffs have alleged facts plausibly showing that the DMS Law violates the First Amendment by compelling speech in at least three ways: (1) by mandating that Plaintiffs present compiled information to third-party integrators, *see* FAC ¶¶ 190-194; (2) by forcing Plaintiffs to draft computer code, *see* FAC ¶¶ 195-198; and (3) by requiring Plaintiffs to publish materials supporting "open integration," *see* FAC ¶¶ 199-200. On a motion to dismiss, the allegations of the FAC must be accepted as true and construed in the light most favorable to Plaintiffs. *E.g., Silvas v. E\*Trade Mortgage Corp.*, 514 F.3d 1001, 1003-04 (9th Cir. 2008) ("All allegations of material fact are taken as true and construed in

the light most favorable to the nonmoving party.").

Part I responds to Defendants' theory that the DMS Law does not implicate speech at all. Part II responds to Defendants' arguments with respect to each of those violations.

## I. THE DMS LAW REGULATES SPEECH, NOT CONDUCT.

Defendants argue that the DMS Law cannot violate the First Amendment regardless of the facts alleged in the FAC because the Law "regulates conduct, not speech." Dkt. 126 at 1; *see also id.* at 5-7.[1] But Defendants' argument is based on a false dichotomy—here, the DMS Law directly regulates *both* conduct and speech. As such, the cases that Defendants cite concerning "incidental" impact on speech are inapposite.

The DMS Law regulates speech because it requires Plaintiffs to communicate information—"protected dealer data"—to third-party integrators. For example, Plaintiffs must adopt "a standardized framework for the *exchange, integration and sharing of data*." A.R.S. § 28-4654.A(1) (emphasis added). Moreover, Plaintiffs must communicate "protected dealer data" to "authorized integrators" using "open application programming interfaces" or "a similar open access integration method." *Id.*, § 28-4654(2). And Plaintiffs are prohibited from imposing any restrictions on "sharing protected dealer data." *Id.*, § 28-4653.A(3)(a).

To be sure, certain aspects of the DMS Law could also be read to regulate "conduct," but a focus of the Law is on mandating the exchange and sharing of information between DMS providers, dealers, and "authorized integrators." And it is well-established that the communication of information is speech protected by the First Amendment. *See Village of Schaumburg v. Citizens for a Better Environment*, 444 U.S. 620, 632 ("communication of information...[is] within the protection of the First Amendment"); *Giebel v. Sylvester*, 244 F.3d 1182, 1186-87 (9th Cir. 2001) ("words communicating information are 'speech' within the meaning of the First Amendment, whether or not the words convey important ideas"); *Universal City Studios, Inc. v. Corley*, 273 F.3d 429, 447 (2d Cir. 2001) ("it is the conveying

---

[1] Of course, Defendants' interpretation would render moot the Court's express permission for Plaintiffs to replead the First Amendment claim.

3

1  of information that renders instructions 'speech' for purposes of the First Amendment'").

2  Defendants argue that "the regulation of data access is a regulation of conduct, not speech." Dkt. 126 at 6. But labelling the DMS Law a "data access" regulation does not obscure its true nature. The Law compels Plaintiffs to allow third parties to access Plaintiffs' computer systems, and it *also* obligates Plaintiffs to communicate information to third-party integrators in connection with that access. Defendants' own expert, Hoyt Kesterson, has acknowledged the communicative nature of these obligations. *See, e.g.*, Dkt. 43-1, ¶ 13 ("In short, *the API*, as designed by the responder/DMS provider, *sets the rules for the conversation between the responder and the requestor*.") (emphasis added).  The speech compelled here is not an "incidental" impact of the DMS Law; it is the law's fundamental goal.

Because the DMS Law is focused on compelling Plaintiffs to share information, Defendants' authority is inapposite. For example, *Rumsfeld v. Forum for Academic & Institutional Rights, Inc.*, 547 U.S. 47 (2006), concerned a law focused on regulating conduct—i.e., requiring universities to provide military recruiters access to campus. *Id.* at 51. While universities may have needed to send "scheduling emails" announcing the recruiter visits—e.g., "The U.S. Army recruiter will meet interested students in Room 123 at 11 a.m."—these communications were "plainly incidental to the [law's] regulation of conduct." *Id.* at 62. Such ministerial scheduling emails are not remotely comparable to the requirements of the DMS Law that Plaintiffs communicate their data compilations, draft new computer code, and develop and publish standards for "open access integration." Moreover, the universities had the option to stay completely silent simply by refusing to provide recruiting assistance to any on-campus recruiter. *Id.* That is not an option here: Plaintiffs may not refuse to provide the data to third parties upon request of the dealers— that is the very gravamen of the DMS Law.

Defendants' other cases are equally inapposite. For example, Defendants cite a few out-of-context aphorisms from *Sorrell v. IMS Health Inc.*, 564 U.S. 552 (2011), for the unremarkable proposition that certain conduct is not protected by the First Amendment. But

4

the Court in *Sorrell* found that the challenged statute, which prohibited disclosure of certain pharmacy records for marketing purposes, did impose more than an incidental burden on speech, noting that "[w]hile the burdened speech results from an economic motive, *so too does a great deal of vital expression.*" *Id.* at 567 (emphasis added). Defendants also cite Justice O'Connor's concurrence in *Arcara v. Cloud Books, Inc.*, 478 U.S. 697, 708 (1986), which stated that a regulation targeted at shutting down places of illegal prostitution regulated "neither speech nor an incidental, nonexpressive effect of speech." While quoting the *Arcara* concurrence may produce a nice soundbite, the case has nothing to do with the type of law at issue here. *See also Airbnb, Inc. v. City & Cty. of San Francisco*, 217 F. Supp. 3d 1066 (N.D. Cal. 2016) (upholding restriction on booking rentals for unregistered units "directed at specific business transactions" that did not target expressive activity). These cases—involving speech that was either unrelated to, or at best "incidental" to, regulated conduct—are in stark contrast to a law whose central purpose is to compel Plaintiffs to share information.

Finally, even assuming that the DMS Law did regulate some conduct, Defendants fail to show that dismissal of the First Amendment claim would be justified. Indeed, Defendants fail to acknowledge that even "incidental" speech is protected under the First Amendment. *See Rumsfeld*, 547 U.S. at 48. As such, a law's impact on "incidental" speech must be "no greater than is essential" and promote "a substantial government interest." *Id.* at 67 (quoting *United States v. Albertini*, 472 U.S. 675, 689 (1985)). This is a fact-based inquiry on which Defendants have the burden of proof, and is therefore not amenable to resolution on a motion to dismiss. *See Turner Broad. Sys. v. FCC*, 512 U.S. 622, 664-65 (1994).

**II.    DEFENDANTS' SPECIFIC CHALLENGES TO THE ALLEGED FIRST AMENDMENT VIOLATIONS ARE MERITLESS.**

Plaintiffs have alleged that the DMS Law compels speech in violation of the First Amendment in at least three ways. To prevail on the motion to dismiss, Defendants would need to show that each of these theories fails. Defendants cannot make such a showing on

5

any of these theories.

## A. The DMS Law Compels Speech to "Authorized Integrators."

The DMS Law violates the First Amendment because the Law compels Plaintiffs to present information that Plaintiffs have compiled to third-party integrators while simultaneously denying Plaintiffs the ability to exercise discretion over the content of those communications.

It is well-established that "the presentation of an edited compilation of speech generated by other persons…falls squarely within the core of First Amendment security." *Hurley v. Irish-American Gay, Lesbian & Bisexual Grp. of Boston, Inc.*, 515 U.S. 557, 570 (1995); *see also Ark. Ed. Television Comm'n v. Forbes*, 523 U.S. 666, 674 (programming decisions "constitute communicative acts" even where they "involved the compilation of the speech of third parties"; a speaker "need not 'generate, as an original matter, each item featured in the communication'").

Here, Plaintiffs have invested hundreds of millions of dollars in building dealer management systems ("DMSs"). FAC, ¶¶ 38, 46. These DMSs creatively compile a vast amount of information that Plaintiffs have selected, edited, organized, and curated. *Id.*, ¶¶ 8, 41, 45. The content of Plaintiffs' DMSs reflects the editorial decisions that Plaintiffs have made in deciding what information should (and should not) be presented to system users. *Id.*, ¶¶ 190, 191. Defendants expressly alleged the creative and expressive nature of these compilations in the FAC:

> 190. The DMS Law abridges the freedom of speech by compelling Plaintiffs to engage in an exchange of information with third parties, which information is itself protected speech because it includes Plaintiffs' expressive editorial discretion in the selection, organization, and presentation of information[.] Plaintiffs have selected, compiled, and organized a significant amount of information in their DMSs. Plaintiffs exercise editorial discretion in determining the information to include in their DMSs. Plaintiffs also exercise editorial discretion in determining the information to exclude from their DMSs. The information is also formatted, sorted, and linked in accordance with Plaintiffs' respective, unique sets of business rules. The information in a DMS is not limited to data that a dealer enters into the system. Rather, Plaintiffs have selected, and in some instances created, a wide variety of valuable information for

6

> their DMSs, including price guides, rebate, incentive, and warranty information, and marketing tools. While such information in a dealer's DMS relates to the dealer's business operations, the dealer did not author, compile, or organize the information and does not own that information.

*See also* FAC, ¶¶ 8, 41, 45.

Under A.R.S. § 28-4653, Plaintiffs are compelled to present their expressive compilations to third-party integrators. In particular, Plaintiffs must share "protected dealer data" with third parties authorized by Arizona dealers to receive such information. "Protected dealer data" is broadly defined in the DMS law to include all data that "relates to a dealer's business operations." A.R.S. § 28-4651(7)(c). Plaintiffs are expressly prohibited from imposing "any…restriction" on the sharing of such data. *See* A.R.S. § 28-4653.A(3)(a); *see also id.*, § 28-4653.A(3)(b)(i) (prohibiting "[a]n unreasonable limitation or condition on the scope or nature of the data that is shared with an authorized integrator"). Additionally, Plaintiffs are compelled to present the "protected dealer data" to third parties by "[a]dopt[ing] and mak[ing] available a standardized framework for the exchange, integration and sharing of data." A.R.S. § 28-4654.A(1); *see also id.*, § 28-4654.A(2) (compelling Plaintiffs to present the "protected dealer data" to third parties using "application programming interfaces" or "similar open access integration method").

In compelling Plaintiffs to present their compilations of information to third parties, the DMS Law requires Defendants to engage in protected speech. Indeed, as noted above, the Supreme Court has repeatedly recognized that presenting such compilations is speech protected by the First Amendment. *See Hurley*, 515 U.S. at 570; *Forbes*, 523 U.S. at 674.

The DMS Law also violates the First Amendment because the Law compels Plaintiffs to include information in presenting their compilations that Plaintiffs would otherwise exclude. The FAC specifically alleges this compelled speech:

> 191. Plaintiffs exercise editorial discretion in selecting and presenting information to third parties that integrate with Plaintiffs' DMSs. Indeed, Plaintiffs specially tailor the content of their communications based on the target audience (i.e., the nature, identity, and needs of an integrator). Plaintiffs do not communicate all information related to a dealer's business operations to any integrator. Moreover, Plaintiffs have made the

7

> decision to withhold certain types of information from all integrators. For example, Plaintiffs will not communicate certain OEM data to integrators, even when the OEM data is otherwise related to a dealer's business operations.
>
> 192. The DMS law removes Plaintiffs' ability to determine the content of their communications with third party integrators. Under the DMS law, Plaintiffs can be compelled to communicate to "authorized integrators" all "protected dealer data" defined extraordinarily broadly as effectively all the data on the DMS, including "[p]ersonal, financial or other data relating to a consumer," "[m]otor vehicle diagnostic data," as well [as] all "[o]ther data that relates to a dealer's business operations in the dealer data system." As such, the DMS Law deprives Plaintiffs of the ability to exercise any degree of editorial discretion in selecting and presenting information to integrators. Moreover, the DMS law compels Plaintiffs to convey information to integrators that Plaintiffs would otherwise exclude from such communications.
>
> 193. The DMS Law also compels speech by removing Plaintiffs' ability to refrain from disseminating protected speech that includes Plaintiffs' expressive editorial discretion. The body of information that the DMS Law compels Plaintiffs to share reflects Plaintiffs' editorial discretion in selecting the information to include and exclude. By compelling Plaintiffs to communicate all information related to a dealer's business operations to "authorized integrators," the DMS Law requires Plaintiffs to share information reflecting Plaintiffs' editorial discretion in selecting and presenting that information.

Again, compelling Plaintiffs, against their editorial discretion, to include information in their communications with third-party integrators violates the First Amendment. *See Hurley*, 515 U.S. at 570; *Forbes*, 523 U.S. at 674.

Defendants offer no meaningful response. They first assert that the "organization" of data does not implicate speech rights. Dkt. 126 at 7. But Defendants provide no support for this assertion, which is directly contrary to the Supreme Court's holdings in *Hurley* and *Forbes. See* 515 U.S. at 570 ("the presentation of an edited compilation of speech generated by other persons…falls squarely within the core of First Amendment security"); 523 U.S. at 674 ("[a]lthough programming decisions often involve the compilation of the speech of third parties, the decisions nonetheless constitute communicative acts").

Defendants also argue that the DMS Law "imposes no limitations on Plaintiffs' 'selection, organization, [or] presentation'" of data. Dkt. 126 at 7-8. But this is directly

8

contrary to the FAC, which alleges that the DMS Law compels Plaintiffs to include information in their data compilations that Plaintiffs would otherwise exercise editorial discretion to exclude. *See* FAC, ¶¶ 192, 193 (quoted above).

Defendants further ignore the FAC in claiming that "Plaintiffs have not established that they have any First Amendment interest in the data they transmit to third parties." Dkt. 126 at 8. Plaintiffs have sufficiently alleged a First Amendment interest in their data compilations because Plaintiffs have exercised editorial discretion in the selection, editing, and organization of the data forming the compilations. FAC, ¶¶ 8, 41, 45, 190, 191. Moreover, Plaintiffs exercise editorial discretion in communicating the data compilations to third-party integrators. *Id.*, ¶¶ 191-193.

Finally, Defendants argue that requiring Plaintiffs to communicate their editorial content to third-party integrators is akin to other "regulated" communications, such as proxy statements or workplace threats. Dkt. 126 at 8. Defendants' reliance on *Ohralik v. Ohio State Bar Ass'n*, 436 U.S. 447 (1978), in support of this argument is misplaced. In rejecting the notion that a lawyer's direct, in-person solicitation of a prospective client is protected by the First Amendment, *Ohralik* used the examples cited by Defendants to "illustrate[] that the State does not lose its power to regulate commercial activity deemed harmful to the public whenever speech is a component of that activity." *Id.* at 456. *Ohralik*'s refusal to extend First Amendment protection to speech incidental to illegal or harmful conduct—as in *Arcara*—is inapposite here, where the DMS Law seeks to directly regulate Plaintiffs' lawful exercise of editorial expression.

**B.     The DMS Law Compels Plaintiffs to Draft Computer Code.**

The DMS Law also violates the First Amendment by compelling Plaintiffs to write computer code.

It is black-letter law that the expressive elements of computer code are speech protected by the First Amendment. *See, e.g.*, *Corley*, 273 F.3d at 449 ("we join the other courts that have concluded that computer code, and computer programs constructed from code, can merit First Amendment protection"); *Junger v. Daley*, 209 F.3d 481, 484 (6th Cir.

9

2000) ("Because computer source code is an expressive means for the exchange of information and ideas about computer programming, we hold that it is protected by the First Amendment."). This protection applies even though code also performs a function—i.e., providing instructions to a computer. *See, e.g.*, *Corley*, 273 F.3d at 447 ("the fact that a program has the capacity to direct the functioning of a computer does not mean that it lacks the additional capacity to convey information, and it is the conveying of information that renders instructions 'speech' for purposes of the First Amendment").

In dismissing the Complaint, the Court held that Plaintiffs had failed to allege that the computer code at issue in this case would include expressive elements. Plaintiffs addressed the Court's finding in the FAC, alleging the expressive nature of the code at issue in this case. *See* FAC, ¶¶ 195-198:

> 195. The DMS Law also abridges the freedom of speech by compelling Plaintiffs to draft computer code. To comply with the DMS law, Plaintiffs must write computer code to interact with "authorized integrators," who will be the users of Plaintiffs' code under the DMS Law. For example, Plaintiffs must draft code to receive and respond to requests from "authorized integrators," who will exercise their mind or will in interacting with that code by commanding it to communicate the information they choose to request. While such computer code may have functional characteristics, it is also expressive.
>
> \*   \*   \*
>
> 198. As in *Aharonian*, the code that Plaintiffs are compelled to write to comply with the DMS Law will be expressive. Plaintiffs' software developers must devise the format of the code and select [] the names, structure and other expressive elements. As such, the code will express the creative choices that Plaintiffs' software developers make in writing it. Moreover, the code will communicate many of these expressive choices and other information about Plaintiffs' computer systems to those who would access Plaintiffs' DMSs, as well as to other third-party programmers.

The DMS Law thus violates the First Amendment by compelling Plaintiffs to draft expressive computer code. *See* FAC, ¶¶ 195-198.

Defendants offer little in response. Again disregarding the allegations in the FAC, Defendants first simply argue that Plaintiffs' code is not expressive. Dkt. 126 at 9. But this assertion ignores the allegations of the FAC identifying the code's expressive elements.

10

FAC, ¶¶ 195-198. In light of these allegations, the expressive nature of the code is a factual issue that cannot be resolved at this stage of the proceeding. *See Welsh v. Boy Scouts of Am.*, 742 F. Supp. 1413, 1431 (N.D. Ill. 1990) ("Whether an organization engages in expressive association is a question of fact, and questions of fact are not appropriately considered in connection with a motion to dismiss."); *Am. Ass'n of Disabilities v. Herrera*, 690 F. Supp. 2d 1183, 1215 (D.N.M. 2010) ("The Plaintiffs allege that the act of helping citizens to register to vote is, in itself, expressive conduct protected under the First Amendment. . . . Accepting all facts pled in the complaint as true and granting all reasonable inferences from the pleadings in favor of the Plaintiffs, . . . the Court finds that the Plaintiffs, in their First Amended Complaint, have met both prongs of the expressive-conduct standard and have, accordingly, stated a First-Amendment expressive-conduct claim.").

Second, Defendants argue that the "code itself" is not "transmitted." Dkt. 126 at 9. There are at least two fundamental problems with this assertion. To start, Defendants' argument is a factual one premised on statements outside the four corners of the FAC. *See id*. And Defendants' argument is contrary to the allegations of the FAC, which state that the expressive elements of the code are communicated to both programmers and users of the code: "Moreover, the code will communicate many of these expressive choices and other information about Plaintiff's computer systems to those who would access Plaintiffs' DMSs, as well as to other third-party programmers." FAC, ¶ 198. Nothing more is needed to support a First Amendment claim. *See, e.g., Corley*, 273 F.3d at 446 ("The undisputed evidence reveals that even pure object code can be, and often is, read and understood by experienced programmers. And source code (in any of its various levels of complexity) can be read by many more."); *id.* at 448 ("A programmer reading a program learns information about instructing a computer, and might use this information to improve personal programming. Moreover, programmers communicating ideas to one another almost inevitably communicate in code, much as musicians use notes); *see also* FAC, ¶ 198 (alleging expressive nature of code). Again, the well-pleaded allegations of the FAC must be taken as true at this stage of the case. *E.g., Silvas*, 514 F.3d at 1003-04.

### C. The DMS Law Compels Speech in Support of "Open Integration."

Finally, the DMS Law violates the First Amendment because it compels Plaintiffs to engage in speech to support the concept of the "open integration" of dealer management systems. In particular, under A.R.S. § 28-4654.A(1), Plaintiffs are required to "make available"—i.e., publish—"a standardized framework for the exchange, integration and sharing of data from dealer data systems." Moreover, Plaintiffs are required to "provide"—i.e., publish—"open application programming interfaces" or "a similar open access integration method." *Id.*, § 28-4654.A(2). The FAC alleges in detailed, non-summary fashion that the speech compelled by these provisions is expressive:

> 199. . . . To provide a standardize[d] framework for "open" integration as required under the DMS law, Plaintiffs are necessarily compelled to write and publish interface specifications and associated documentation that define and describe the framework. As with computer code, these specifications are expressive—they communicate both the creative choices of the authors of the specifications and information about Plaintiffs' computer systems. For example, these specifications will necessarily provide explanations and details about how "authorized integrators" can use that framework to achieve "open" integration, including but not limited to the types of information available, the formatting of that information, the types of requests and responses that both the integrator and Reynolds will provide through the interfaces, and the meanings associated with each of those requests and responses. These specifications are speech protected under the First Amendment. Compelling Plaintiffs to create and publish the specifications violates the First Amendment.

Compelling Plaintiffs to devise and publish standards to allow "open" integration violates Plaintiffs' First Amendment rights. *See, e.g., Corley,* 273 F.3d at 446-47 (noting that First Amendment protection has been applied to "technical scientific information," "scientific research," and "the publication of instructions"); *see also id.* ("Even dry information, devoid of advocacy, political relevance, or artistic expressing, has been accorded First Amendment protection.").

Defendants' response is to dismiss these requirements as merely "incidental" to the DMS Law. *Id.* at 10 ("To the extent Plaintiffs must develop documentation for outside parties to use that standardized framework, that speech is incidental to the conduct being

regulated and does not give rise to any First Amendment protection."). But as paragraph 199 of the FAC makes clear, Plaintiffs plead that these are direct requirements (not incidental consequences) of the DMS law that compel Plaintiffs to speak.

Even worse, these speech regulations are content-based, compelling Plaintiffs to engage in speech in support of Defendants' "open access" position. *See* FAC ¶ 200. Defendants argue that the Court can ignore the content-based character of these regulations because Plaintiffs could separately speak out against the standards that they have been forced to publish. *See* Dkt. 126 at 6 n.1 ("[Plaintiffs] remain free to engage in any speech about the Dealer Law, including criticizing the Law or seeking its repeal."). But the ability to engage in counter-speech does not cure the initial constitutional violation of compelled speech. *See Frudden v. Pilling*, 742 F.3d 1199, 1205-06 (9th Cir. 2014) ("[W]hether the RGES students had any alternative means to disclaim the school motto is not significant. Illustratively, in *Wooley*, the plaintiffs could have 'placed on their bumper a conspicuous bumper sticker explaining in no uncertain terms that they do not profess the motto 'Live Free or Die' and that they violently disagree with the connotations of that motto.'").

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiff's motion to dismiss the Fourth Claim for Relief of the FAC.

RESPECTFULLY SUBMITTED this 3rd day of August, 2020.

QUARLES & BRADY LLP  
Renaissance One  
Two North Central Avenue  
Phoenix, AZ 85004-2391  

By:*/s/ Brian A. Howie*  
    Brian A. Howie  
    Lauren Elliott Stine  

*Attorneys for Plaintiffs*

13

QB\170667.00001\64220579.3

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
2099 Pennsylvania Ave., NW, Ste. 100
Washington, DC 20006, 201-747-1900
Thomas J. Dillickrath* (DC 483710)
TDillickrath@sheppardmullin.com
Jonathan R. DeFosse* (DC 482148)
jdefosse@sheppardmullin.com

Four Embarcadero Center, 17th Floor
San Francisco, CA 94111, 415-434-9100
Molly C. Lorenzi* (CA 315147)
MLorenzi@sheppardmullin.com

GIBBS & BRUNS LLP
1100 Louisiana, Ste. 5300
Houston, TX 77002, 713-650-8805
Aundrea K. Gulley* (TX 24034468)
agulley@gibbsbruns.com
Brice A. Wilkinson* (TX 24075281)
bwilkinson@gibbsbruns.com
Denise Drake* (TX 24092358)
ddrake@gibbsbruns.com

*Attorneys for The Reynolds and Reynolds Company*

MAYER BROWN LLP
71 S. Wacker Drive
Chicago, IL 60606
312-782-0600
Britt M. Miller* (IL 6256398)
bmiller@mayerbrown.com
Michael A. Scodro* (IL 6243845)
mscodro@mayerbrown.com
Brett E. Legner* (IL 6256268)
blegner@mayerbrown.com

1999 K Street, NW
Washington, DC 20006
202-263-3000
Mark W. Ryan* (DC 359098)
mryan@mayerbrown.com

*Attorneys for CDK Global, LLC*

*Admitted Pro Hac Vice