Mary R. O'Grady, 011434
Jeffrey B. Molinar, 018512
William D. Furnish, 028725
Emma Cone-Roddy, 034285
OSBORN MALEDON, P.A.
2929 North Central Avenue, 21st Floor
Phoenix, Arizona 85012-2793
(602) 640-9000
mogrady@omlaw.com
jmolinar@omlaw.com
wfurnish@omlaw.com
econe-roddy@omlaw.com

Brunn (Beau) W. Roysden III, 028698
Rusty D. Crandell, 026224
OFFICE OF THE ARIZONA ATTORNEY GENERAL
2005 North Central Avenue
Phoenix, Arizona 85004
(620) 542-3333
beau.roysden@azag.gov
rusty.crandell@azag.gov

*Attorneys for Defendant Arizona Attorney General Mark Brnovich*

John C. Norling, 013986
Jeffrey D. Gardner, 021783
Jimmie W. Pursell, Jr., 19957
JENNINGS, STROUSS & SALMON, P.L.C.
One East Washington Street, Suite 1900
Phoenix, Arizona 85004-2554
Telephone: (602) 262-5911
jnorling@jsslaw.com
jgardner@jsslaw.com
jpursell@jsslaw.com

Derek T. Ho (*Pro Hac Vice*)
Daniel V. Dorris (*Pro Hac Vice*)
Joshua Hafenbrack (*Pro Hac Vice*)
Jayme L. Weber, 032608
KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
Telephone: (202) 326-7900
dho@kellogghansen.com
ddorris@kellogghansen.com
jhafenbrack@kellogghansen.com
jweber@kellogghansen.com

*Attorneys for Intervenor-Defendant Arizona Automobile Dealers Association*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA**

CDK Global, LLC, a limited liability company, and The Reynolds and Reynolds Company, a corporation,

Plaintiffs,

v.

Mark Brnovich, Attorney General of the State of Arizona,

Defendant,

Arizona Automobile Dealers Association,

Intervenor-Defendant.

No. 2:19-cv-04849-GMS

**DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR STAY OR INJUNCTION PENDING APPEAL**

Defendants jointly respond in opposition to Plaintiffs' Motion for Stay or Injunction Pending Appeal ("Motion"). Plaintiffs' motion should be denied because: (1) a stay is not appropriate given the procedural posture of this case; (2) this Court has already correctly decided that Plaintiffs have not met the requirement of showing

a likelihood of success on the merits of their claims; and (3) Plaintiffs cannot satisfy the other requirements for an injunction pending appeal.

**I. INTRODUCTION.**

On May 20, 2020, this Court granted Defendants' motion to dismiss with respect to seven of the ten claims in Plaintiffs' complaint[1] challenging Arizona's new Dealer Data Security Law ("Dealer Law"). Dkt. 91. Two months later, on July 24, 2020, following a two-day evidentiary hearing, the Court denied Plaintiffs' motion for a preliminary injunction to prevent enforcement of the Dealer Law. Dkt. 127. The Court denied the motion for preliminary injunction because Plaintiffs "have not proven a likelihood of success on the merits of their claims," and therefore the Court did not need to reach the remaining factors that Plaintiffs also had to satisfy to obtain a preliminary injunction. *Id*. at 17; *see also Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (en banc) ("Because it is a threshold inquiry, when 'a plaintiff has failed to show the likelihood of success on the merits, we "need not consider the remaining three [preliminary injunction elements]."'") (citations omitted).

Although the Dealer Law had gone into effect on August 27, 2019, the State of Arizona Defendants stipulated on September 4, 2019, that they would "take no action to enforce [the Dealer Law] for the pendency of Plaintiffs' Motion for Preliminary Injunction in this Court," and the Court entered an order based on that stipulation. Dkt. 28 at 2; Dkt. 29. Accordingly, when the Court denied Plaintiffs' motion for preliminary injunction on July 24, 2020, the stipulated order ended by its own terms.

In the Motion now before the Court, Plaintiffs are asking for either a stay or an injunction pending their appeal to the Ninth Circuit. In that Motion, Plaintiffs once

---

[1] As to one of the seven claims dismissed (the First Amendment claim), the Court allowed Plaintiffs to amend their complaint. Plaintiffs have filed a First Amended Complaint, and Defendants' motion to dismiss the amended First Amendment claim is pending before the Court.

again argue (among other things) that they are likely to succeed on the merits of their claims—a proposition that this Court rejected less than a week before.

## II. PLAINTIFFS ARE NOT ENTITLED TO A STAY.

Plaintiffs' primary request in their Motion is for the Court "to stay the dissolution of its order barring Defendants from enforcing [the Dealer Law]," and they alternatively ask for an injunction against Defendants pending appeal. Motion at 1. Plaintiffs' request for a stay should be rejected because the Court has ordered no judicial intervention that could be stayed. On the contrary, the Court *declined* to issue a preliminary injunction that would have altered the status quo. To obtain judicial alternation of the status quo now, Plaintiffs must satisfy the requirements for an injunction pending appeal.

Stays and injunctions are not the same thing; instead, they "have typically been understood to serve different purposes." *Niken v. Holder*, 556 U.S. 418, 428 (2009). An injunction "is a means by which a court tells someone what to do or not to do." *Id*. "By contrast, instead of directing the conduct of a particular actor, a stay operates upon the judicial proceeding itself. It does so either by halting or postponing some portion of the proceeding, or by temporarily divesting an order of enforceability." *Id*. A stay "suspend[s] judicial alteration of the status quo." *Id.* at 429.

Here, there is no judicial proceeding that could be postponed – or court order put on hold – that would prevent the Dealer Law from being enforced during the pendency of the appeal. The only proceedings left in this Court are the motion to dismiss Plaintiffs' amended First Amendment claim, potentially followed by discovery on Plaintiffs' remaining claims; staying those proceedings would not affect the enforceability of the Dealer Law pending Plaintiffs' current appeal.

Nor would it be proper for the Court to "stay the dissolution of its order barring Defendants from enforcing" the Dealer Law, as Plaintiffs suggest. That order was based on the parties' voluntary stipulation, and the agreement not to enforce

applied only during "the pendency of Plaintiffs' Motion for Preliminary Injunction in this Court." Dkt. 28-29. Now that this Court has denied the Motion for Preliminary Injunction, the parties' agreement and the Court's corresponding order have—by their own terms—expired. Thus, there is no order dissolving Docket No. 29 that could be stayed. The only procedural mechanism available to prevent enforcement of the Dealer Law is a fresh order from the Court barring enforcement—that is, an injunction pending appeal.

In short, even though Plaintiffs failed to establish the requisite showing for a preliminary injunction, they are in effect asking the Court to grant them that injunction through the backdoor, while they proceed with an appeal that could take many months if not a year-plus to resolve. There is no basis for that request. The Arizona Legislature passed the Dealer Law – unanimously – more than a year ago to protect consumers and dealership data; now that Plaintiffs' request for an injunction has been denied, the Law should be enforced.

## III. PLAINTIFFS ARE NOT ENTITLED TO AN INJUNCTION PENDING APPEAL BECAUSE THEY "HAVE NOT PROVEN A LIKELIHOOD OF SUCCESS ON THE MERITS OF THEIR CLAIMS."

Plaintiffs' alternative request for an injunction barring Defendants from enforcing the Dealer Data Security Law pending appeal also must be denied. Such injunctions are governed by Federal Rule of Civil Procedure 62(d),[2] which states:

> Injunction Pending an Appeal. While an appeal is pending from an interlocutory order or final judgment that . . . refuses . . . an injunction, the court may suspend, modify, restore, or grant an injunction on terms for bond or other terms that secure the opposing party's rights.

A court "may" grant such an injunction pending appeal if the moving party shows "[1] that it is likely to succeed on appeal, [2] that it is likely to suffer irreparable harm in the absence of injunctive relief, [3] that the balance of hardships tips in its favor, and [4] that an injunction is in the public interest." *Gila River Indian Cmty. v. United*

[2] Before 2018, this Rule was found in Rule 62(c).

*States*, CV-10-1993-PHX-DGC, 2011 WL 1656486, at *1 (D. Ariz. May 3, 2011) (citing *Winter v. Natural Res. Def. Council*, 555 U.S. 7 (2008)).

Plaintiffs' request for an injunction pending appeal must be denied because, as this Court just recently determined, Plaintiffs "have not proven a likelihood of success on the merits of their claims." Dkt. 127 at 17; *see Salman v. City of Phoenix*, CV 12-1219-PHX-JAT, 2012 WL 13026912, at *2 (D. Ariz. July 9, 2012) ("Because Plaintiffs' present motion does not state any new reasons that they are likely to succeed on the merits that were not already asserted in their prior motions for temporary restraining order and preliminary injunction, this Court cannot find that Plaintiffs are likely to succeed on the merits of their appeal.").

A. The Court Correctly Rejected Plaintiffs' Copyright Arguments.

Although Plaintiffs argue that the Court "recognized . . . the existence of three classes of copyright-protected material relevant here" (Dkt. 130 at 2), the three classes referenced were the same as those argued by Plaintiffs at the preliminary injunction hearing. Dkt. 127 at 4. The Court considered and rejected Plaintiffs' preemption arguments with respect to each of those categories of potentially copyright-protected material. Dkt. 127 at 8-9. Rather than assert new reasons that they are likely to succeed on the merits, Plaintiffs claim that the Court "fail[ed] to properly account for controlling law and undisputed facts as to each of the three classes of protected material." Dkt. 130 at 3. But all of the cases and allegedly undisputed facts were fully briefed and submitted into evidence. Plaintiffs merely assert, but fail to show, that the Court got it wrong.

Plaintiffs argue that "using an API to access a DMS causes a copy of the DMS code to be made in memory of a *DMS server*." Dkt. 130 at 4 (emphasis in original). In its Order, the Court recognized that "Plaintiffs assert that the Dealer Law is preempted by the Copyright Act because 'each time an integrator accesses Plaintiffs' copyrighted software programs . . . , an unauthorized copy is loaded into the memory of the integrator's computer,' . . . and *a copy is made within Plaintiffs' own systems*."

Dkt. 127 at 4-5 (emphasis added). The Court noted that "Plaintiffs also argue that automated access" provided by application programming interfaces (APIs) 'results in the unauthorized use and copying of Plaintiffs' copyrighted DMS software,'" an argument that the Court expressly found was unsupported by the evidence. Dkt 127, at 5 n.8 ("Plaintiffs assert this in their briefing; however, their witness's testimony at the June 2, 2020 hearing does not sufficiently support this point.").

Plaintiffs' reliance on *MAI Sys. Corp. v. Peak Computer, Inc.*, 991 F.2d 511 (9th Cir. 1993), is unavailing because there, unlike here, the defendant directly conducted the unauthorized copying. *See id.* at 517, 521 (the "Peak technician runs the computer's operating system software"). When using APIs, dealer-authorized integrators do not run any DMS software; they only request that CDK or Reynolds do so. *MAI Systems* also was not a preemption case, so it offers no support for Plaintiffs' new theory that requiring a copyright holder to make copies of its own software (within its own servers) somehow interferes with its exclusive rights to *prevent others* from copying its software. Moreover, the Court was well aware of *MAI Systems*, because Plaintiffs cited it in their Motion for Preliminary Injunction (Dkt. 20 at 10-11) and Plaintiffs' counsel raised it during closing arguments at the preliminary injunction hearing. *See* Transcript of June 3, 2020 Hearing, Volume B, pp. 414-15.

Turning to Plaintiffs' arguments regarding the copying of their APIs, Plaintiffs' disagreement with the Court's analysis of *Oracle Am., Inc. v. Google Inc.*, 750 F.3d 1339 (Fed. Cir. 2014), fails to show likelihood of success. The Court correctly analyzed *Oracle*. In *Oracle*, Google "copied" "verbatim" Oracle's API source code for use in Google's own Android operating system. *Id.* at 1350-51. This case is fundamentally different, because (as the Court already found) when dealer-authorized data integrators use APIs to access "Protected Dealer Data" under the Arizona Law, they will not copy any of Plaintiffs' source code. Dkt. 127 at 7.

In their attempt to shoehorn this case into *Oracle*'s holding, Plaintiffs cite limited sections of Kelly Hall's testimony. But Plaintiffs omit the portion of Hall's cross-examination where he conceded the point that distinguishes this case from *Oracle*.

> Q. And you don't know whether RCI participants, users in the RCI program, ever use or copy the source code when they send requests through the API protocols, correct?
>
> A. They have to copy the schema, which you can debate whether that's source code or configuration, but they have to type those -- the attribute names from that schema into their source code to generate the transaction to send through to the DMS.
>
> Q. If you could separate for me the schema and the source code. Your testimony is they have to copy the schema, which is the AP -- how the API must be phrased. That's slightly different than my question, which is, whether or not you know whether users in the RCI program have to copy Reynolds' actual source code in order to send requests through the API?
>
> A. Not source code.

Transcript of June 2, 2020 Hearing, Volume B, pp. 107-08.

Finally, Plaintiffs' arguments with regard to their data collections mixes and matches testimony to give the misleading impression that the Dealer Law allows the wholesale copying of the entire data compilation. Plaintiffs argue that, because the data contained in their compilations are "protected dealer data," a law that requires that a dealer's authorized integrators be allowed to access that data means that the compilation is being copied. This argument is akin to arguing that allowing someone to access the phone book to retrieve a phone number is copying the entire compilation. There is no evidence in the record to suggest that a dealer-authorized integrator copies Plaintiffs' *compilation* of data; on the contrary, the whole point of an API is that the integrator requests and receives data without seeing how that data is organized or compiled. Dkt. 127 at 7. Especially considering the standards applicable to a pre-enforcement facial challenge, Plaintiffs' failure of proof on this point precludes them from showing a substantial likelihood of success on the merits.

B. As the Court Previously Found, Plaintiffs Have Not Demonstrated a Likelihood of Success on the Merits of their Contracts Clause Claim.

In arguing that the Dealer Law impermissibly impairs their contracts in violation of the Contracts Clause, Plaintiffs largely retread ground covered in the preliminary injunction briefing and hearing. A law only creates a constitutional concern under the Contracts Clause if there is a "substantial impairment" of the contract and the law fails to reasonably serve a "significant and legitimate public purpose." *Energy Reserves Grp, Inc. v. Kansas Power & Light Co.*, 459 U.S. 400, 411-12 (1983). "Courts generally defer to the judgment of state legislatures as to both necessity and reasonableness so long as the state itself is not a contracting party." *Lazar v. Kroncke*, 862 F.3d 1186, 1199 (9th Cir. 2017).

In rearguing their Contracts Clause position, Plaintiffs again assert that the Dealer Law impairs their contract terms that prohibit dealers from granting access to their DMS systems and that require Plaintiffs "to protect the sensitive data maintained on the DMS."[3] Dkt. 130 at 8. The Court considered and rejected these arguments in its Order. Further, with regard to the data security argument, Plaintiffs fail to explain how the Dealer Data Security Law will impair this obligation, but simply assert that the Law will create new "attack vectors." *Id*. The Court already rejected Plaintiffs' security arguments as unsupported by the evidence. Dkt. 127 at 14, 16-17. In any event, such alleged attack vectors do not affect the terms of the relevant contracts at all, let alone to the substantial degree necessary to give rise to a Contracts Clause claim. Because the Dealer Data Security Law does not impair Plaintiffs' contracts, they *a priori* do not substantially impair those contracts as contemplated by *Sveen v. Melin*, 138 S. Ct. 1815 (2018).

Finally, Plaintiffs challenge the Court's finding of the Dealer Law's public purpose. As a threshold attack, Plaintiffs dispute the Court's conclusion that *Seltzer*

---

[3] Plaintiffs also advance two previously rejected alleged impairments to their vendor agreements. As the Court noted in its Order, these arguments were raised for the first time at the hearing. Dkt. 127 at 10, n. 10. For the reasons set forth in the Order, Plaintiffs are unlikely to succeed on appeal based on arguments presented for the first time at the hearing.

*v. Cochrane*, 104 F.3d 234 (9th Cir. 1996), places the burden on Plaintiffs, as the objecting parties, to establish that the law serves no valid public purpose. Dkt. 130 at 9. Plaintiffs mischaracterize *Seltzer*'s statement that "the burden is placed on the party asserting the benefit of the statute only when that party is the state," 104 F.3d at 236, asserting that it applies here because State officials are defending the Dealer Law's constitutionality. But that statement applies only when a State defends legislation impairing *its own* contractual obligations. *See id.* (citing *State of Nev. Employees Ass'n, Inc. v. Keating*, 903 F.2d 1223, 1228 (9th Cir. 1990), which addressed a Nevada law impairing Nevada's own state pension obligations, and *National Collegiate Athletic Ass'n v. Miller*, 795 F. Supp. 1476, 1487 (D. Nev. 1992), *aff'd on other grounds*, 10 F.3d 633 (9th Cir. 1993), , which discussed the standard applicable "when the state itself is a party to the contract"). State officials do not "assert[] the benefit of [a] statute" when they defend the statute's constitutionality in their capacity as enforcers of it. Because, here, "the challenged state law is alleged to have impaired a contractual relationship involving only private parties, *Miller*, 795 F. Supp. at 1487, Plaintiffs bear the burden on public purpose.

Plaintiffs fail to satisfy their burden of showing that the Dealer Law serves no legitimate state interest. Although Plaintiffs cite extensively to *Ass'n of Equip. Manufacturers v. Burgum*, 932 F.3d 727 (8th Cir. 2019) – the Eighth Circuit opinion this Court considered and rejected – these citations are unavailing under *Seltzer* and provide no basis for the Court to revisit the issue of public purpose. Plaintiffs cannot satisfy their burden by arguing that Defendants did not meet their own (nonexistent) burden. This fact alone justifies concluding that the Contracts Clause argument has no likelihood of success on the merits. And moreover, the Court correctly noted that the Law does serve legitimate public purposes – namely, to protect Arizona consumers from "the potentially anti-competitive behavior of the Plaintiffs" and the cybersecurity of dealership data. Dkt. 127 at 12. Plaintiffs offer no new arguments on either point.

C. <u>Plaintiffs' Takings Clause Argument Fails for the Same Reasons as at the Preliminary Injunction Hearing.</u>

Plaintiffs make no new arguments to advance their Takings Clause position. Plaintiffs again argue that "[t]he DMS Law is a *per se* taking because it permits dealer-authorized third-parties to enter the DMSs and write data to Plaintiffs' systems." Dkt. 130 at 12. The Court correctly rejected this argument in its Order denying the preliminary injunction, pointing out that Plaintiffs had cited no authority for the proposition that occupation of an intangible interest could constitute a physical taking. Dkt. 127 at 15. Plaintiffs attempt to remedy this deficiency by citing *Brown v. Legal Found. of Washington*, 538 U.S. 216 (2003), but *Brown* addressed the taking of interest from an interest-bearing trust account. *Id*. at 234. The taking of money is in no way analogous to using APIs to write data into a database.

In the alternative, Plaintiffs again argue that the Dealer Law effects a regulatory taking under *Penn Central Transp. Co. v. New York City*, 438 U.S. 104 (1978). Plaintiffs simply reargue the application of the *Penn Central* factors, urging the Court to reach a different conclusion. Dkt. 130 at 13-15. Plaintiffs cite no evidence that the Court did not address in its Order; Plaintiffs instead contend, unpersuasively, that the Court reached the wrong conclusion in evaluating that evidence. For example, in arguing that the Court misapplied the *Penn Central* factors when it evaluated the economic impact of the DMS Law, Plaintiffs erroneously argue that the Court should evaluate only their revenues from their third-party integrator programs rather than the overall revenues attributable to the DMS systems holistically. Dkt. 130 at 14. Having argued repeatedly about their investments in their DMS systems, Plaintiffs cannot now ask the Court to consider only their revenues from one small slice of those systems' functionality.

As the Court correctly held, Plaintiffs' regulatory takings claim fails because the Dealer Data Security Law is "much more an adjustment of the benefits and burdens of economic life to promote the common good than a physical invasion of

property." *Rancho de Calistoga v. City of Calistoga*, 800 F.3d 1083, 1091 (9th Cir. 2015) (internal citation and quotation marks omitted). For a regulatory taking to occur, the action must be "functionally equivalent to the classic taking in which the government directly appropriates private property or ousts the owner." *MHC Financing Ltd. P'ship v. City of San Rafael*, 714 F.3d 1118, 1127 (9th Cir. 2013) (citation omitted). The Dealer Data Security Law does not – and is not alleged to – do any such thing; rather, it regulates how Plaintiffs must interact with their business partners and what they are allowed to charge. This type of activity is not a regulatory taking. *See Rancho de Calistoga*, 800 F.3d at 1091-92 (rent control ordinance is not regulatory taking).

Plaintiffs cannot succeed on the merits of their Takings Clause claim.

## IV. PLAINTIFFS CANNOT SATISFY THE OTHER REQUIREMENTS FOR AN INJUNCTION PENDING APPEAL.

### A. Plaintiffs Have Not Established that They Would Suffer Irreparable Harm in the Absence of a Stay.

No presumption of irreparable harm applies here. The Ninth Circuit repeatedly has held that "[h]arm must be proved, not presumed." *Flexible Lifeline Sys., Inc. v. Precision Lift, Inc.*, 654 F.3d 989, 999-1000 (9th Cir. 2011); *accord Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (en banc) ("The Supreme Court has emphasized that preliminary injunctions are an 'extraordinary remedy never awarded as of right.'"). Plaintiffs rely on *Goldie's Bookstore, Inc. v. Superior Court of State of Cal.*, 739 F.2d 466, 472 (9th Cir. 1984), but that case proves the point: there, the Ninth Circuit rejected a finding of irreparable harm, in a First Amendment case, because the alleged harm was "not based on any factual allegations" and "appear[ed] to be speculative." 739 F.2d at 472. True here, too.

Plaintiffs cite a 1980s case from the Virgin Islands to suggest that a Contracts Clause violation always results in irreparable harm, but that is not so. *See, e.g.*, *Elementary v. Orleans Parish Sch. Bd.*, 2016 WL 5390393, at *4 (E.D. La. Sept. 27, 2016) (no presumption of irreparable harm in Contracts Clause case); *see also Dexter*

*345 Inc. v. Cuomo*, 663 F.3d 59, 62-64 (2d Cir. 2011) (no preliminary injunction based on Takings Clause claim because "Appellants had not made a sufficient showing of irreparable injury"). Plaintiffs' citation to *Armendariz v. Penman*, 75 F.3d 1311, 1313 (9th Cir. 1996), overruled on other grounds by *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528 (2005), is equally unavailing; *Armendariz* did not address irreparable harm.

Plaintiffs' argument that the alleged violation of their copyrights creates irreparable harm fares no better. Plaintiffs rely on *Warner Bros. Entm't Inc. v. WTV Sys., Inc.*, 824 F. Supp. 2d 1003, 1012 (C.D. Cal. 2011); however, *Warner Bros.* involved an infringer that was distributing the plaintiff's copyrighted works in direct competition with the copyright holder. Here, the alleged infringement consists of causing Plaintiffs to load a copy of their own software into their own systems; there is no threat of a competitor selling pirated copies on the open market, as in *Warner Bros*.

Finally, Plaintiffs argue that "the DMS Law Requires Plaintiffs to take measures that would expose their DMSs and customers to serious data corruption and data security problems." But as noted above, the Court already found that plaintiffs' data corruption and data security arguments were "not substantiated by Plaintiffs' evidence." Op. at 16-17. The Hall Declaration, Plaintiffs' only citation for their data-corruption theory, provides no facts to demonstrate that dealer-controlled data access creates a substantial and immediate risk of data corruption. *See* Hall Decl., ¶ 45 (opining that, where data entry errors occur, they "*can* disrupt all dealer operations" — without offering any facts to show that dealers have caused or will cause such errors (emphasis added)). Similarly, there has ***never*** been even a single data breach caused by a dealer-authorized third party accessing the DMS. Op. at 14. Here too, the Hall and Golder declarations on which Plaintiffs rely provide no evidence to

support the assertion that enforcement of the Dealer Law will, in fact, result in data breaches.[4]

Plaintiffs have wholly failed to establish a likelihood of irreparable harm should the injunction not issue.

B. The Balance Of Equities Weighs Overwhelmingly Against An Injunction, And Injunctive Relief Would Not Serve The Public Interest.

To warrant injunctive relief, Plaintiffs must clearly demonstrate that the "balance of equities weighs in [their] favor" and that the injunction serves the public interest. *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014). "When the government is a party," as here, "these last two factors merge." *Id.* In this case, an injunction is neither equitable nor in the public interest.

An injunction would prevent enforcement of a law unanimously passed by the Arizona Legislature, and signed by Governor Ducey, based on their considered judgment that the law protects data privacy and benefits consumers. The Legislature's determination of the public interest deserves deference. *See Golden Gate Rest. Ass'n v. City & Cty. of San Francisco*, 512 F.3d 1112, 1127 (9th Cir. 2008) (holding "[t]he public interest may be declared in the form of a statute" and noting "[w]e are not sure on what basis a court could conclude that the public interest is not served" by a local ordinance unanimously passed and signed into law); *see also Burford v. Sun Oil Co.*, 319 U.S. 315, 317-18 (1943) ("[I]t is in the public interest that federal courts of equity should exercise their discretionary power with proper regard for the rightful independence of state governments in carrying out their domestic policy."); *Wash. State Grange v. Wash. State Republican Party*, 552 U.S.

[4] The cited paragraph in the Hall Declaration merely argues that "[a]ny breach that results from hostile access to the Reynolds DMS" will harm Reynolds's reputation — it does not provide any facts to show that dealer-controlled data access will result in such breaches in the first place. *See* Hall Decl., ¶ 47. Similarly, the Golder Declaration provides general commentary on how data breaches can affect a company's reputation; it does not purport to demonstrate that dealer-controlled data access in fact is substantially and immediately likely to produce such breaches. *See* Golder Decl., ¶¶ 10, 19-21.

442, 451 (2008) ("[A] ruling of unconstitutionality frustrates the intent of the elected representatives of the people.") (internal quotation marks omitted).

The law serves manifestly important public purposes, including strengthening data-privacy protections and protecting consumers and consumer information. *See supra* pp. 3-4. Arizona's law also brings fairness back to an industry that has suffered greatly from Plaintiffs' abusive market practices. *See* Stejskal Decl. ¶¶ 42-45; Andreu Decl. ¶ 4; Sparrow Decl. ¶ 14. By stopping CDK and Reynolds from imposing astronomically high fees on access to dealer data, the law will promote competition, spur innovation, and lower prices at Arizona's automobile dealerships. *See, e.g.*, *hiQ Labs*, 273 F. Supp. 3d at 1120 (public interest favors the "'vigilant enforcement of the antitrust laws'" and stopping "anticompetitive conduct" (quoting *Am. Express Co. v. Italian Colors Rest.*, 133 U.S. 2304 (2013))).

## V. CONCLUSION.

Plaintiffs' Motion should be denied.

RESPECFULLY SUBMITTED this 13th day of August, 2020.

JENNINGS, STROUSS & SALMON, P.L.C.

By s/ *Jimmie W. Pursell, Jr.*
John C. Norling, 013986
Jeffrey D. Gardner, 021783
Jimmie W. Pursell, Jr., 19957
One East Washington Street, Suite 1900
Phoenix, Arizona 85004-2554

Derek T. Ho (*Pro Hac Vice*)
Daniel V. Dorris (*Pro Hac Vice*)
Joshua Hafenbrack (*Pro Hac Vice*)
Bethan R. Jones (*Pro Hac Vice*)
Jayme L. Weber, 032608
**KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.**
1615 M Street, N.W., Suite 400
Washington, D.C. 20036

*Attorneys for Intervenor-Defendant Arizona Automobile Dealers Association*

MARK BRNOVICH,
ATTORNEY GENERAL

By s/ *Rusty D. Crandell (w/permission)*
Brunn (Beau) W. Roysden III
Rusty D. Crandell
**OFFICE OF THE ARIZONA ATTORNEY GENERAL**
2005 North Central Avenue
Phoenix, AZ 85004

Mary O'Grady
Jeffrey B. Molinar
William D. Furnish
Emma Cone-Roddy
**OSBORN MALEDON, P.A.**
2929 North Central Avenue, 21st Floor
Phoenix, Arizona 85012-2793

*Attorneys for Defendant Arizona Attorney General Mark Brnovich*

**CERTIFICATE OF SERVICE**

☒ I hereby certify that on August 13, 2020, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

- Amar Shrinivas Naik: anaik@sheppardmullin.com
- Andrew Tauber: atauber@mayerbrown.com, wdc.docket@mayerbrown.com
- Aundrea K. Gulley: agulley@gibbsbruns.com, kstehling@gibbsbruns.com
- Bethan R. Jones: bjones@kellogghansen.com, wwiener@kellogghansen.com
- Brendan J. Crimmins: bcrimmins@kellogghansen.com, agilbert@kellogghansen.com
- Brett E. Legner: blegner@mayerbrown.com, courtnotification@mayerbrown.com
- Brice A. Wilkinson: bwilkinson@gibbsbruns.com; ssmith@gibbsbruns.com
- Brian Alexander Howie: brian.howie@quarles.com, docketaz@quarles.com, maria.marotta@quarles.com
- Britt M. Miller: bmiller@mayerbrown.com, courtnotification@mayerbrown.com
- Brunn Wall Roysden, III: beau.roysden@azag.gov, ACL@azag.gov
- Collin R. White: cwhite@kellogghansen.com, ccook@kellogghansen.com
- Daniel Hunt Bergin: Daniel.Bergin@azag.gov, Transportation@azag.gov
- Daniel T. Fenske: DFenske@mayerbrown.com, courtnotification@mayerbrown
- Daniel V. Dorris: ddorris@kellogghansen.com; ktondrowski@kellogghansen.com
- David L. Schwarz: dschwarz@kellogghansen.com, aoak@kellogghansen.com
- Denise L. Drake: ddrake@gibbsbruns.com, kstehling@gibbsbruns.com
- Derek T. Ho: dho@kellogghansen.com, ccook@kellogghansen.com
- Emma Jane Cone-Roddy: econe-roddy@omlaw.com, rsanhadja@omlaw.com
- Jayme Louise Weber: jweber@kellogghansen.com, amosedale@kelloghhansen.com
- Jeffrey Bryan Molinar: jmolinar@omlaw.com, ddybdahl@omlaw.com
- Jonathan Richard DeFosse: jdefosse@sheppardmullin.com, mrpatrick@sheppardmullin.com
- Joshua Hafenbrack: jhafenbrack@kellogghansen.com, jcenzer@kellogghansen.com
- Lauren Elliott Stine: lauren.stine@quarles.com, docketaz@quarles.com, mmarotta@quarles.com
- Mark William Ryan: blegner@mayerbrown, mryan@mayerbrown.com, wdc.docket@mayerbrown.com
- Mary Ruth O'Grady: mogrady@omlaw.com, pnieto@omlaw.com
- Michael Anthony Scodro: mscodro@mayerbrown.com, courtnotification@mayerbrown.com
- Molly C. Lorenzi: MLorenzi@sheppardmullin.com, dbacon@sheppardmulin.com
- Rusty Duane Crandell: Rusty.Crandell@azag.gov, ACL@azag.gov
- Thomas J. Dillickrath: tdillickrath@sheppardmullin.com
- William Dewitt Furnish: wfurnish@omlaw.com, kwilloughby@omlaw.com

☐ I hereby certify that on August 13, 2020, I electronically transmitted a PDF version of the attached document and sent via U.S. Mail to the following:

☒ I further certify that on August 13, 2020, I put in the U.S. Mail a paper courtesy copy of the foregoing document and the Notice of Electronic Filing to the assigned Judge.

By s/*Kathrine A. Roberts-Burch*