1  **WO**

2

3

4

5

6                    **IN THE UNITED STATES DISTRICT COURT**

7                        **FOR THE DISTRICT OF ARIZONA**

8

9   The Reynolds and Reynolds Company, a          No. CV-19-04849-PHX-GMS
    corporation,

10                                               **ORDER**
                    Plaintiff,

11
    v.
12
    Mark Brnovich, et al.,
13
                    Defendants,
14
    and
15
    Arizona Automobile Dealers Association,
16
                    Intervenor Defendant.
17

18

19

20          Before the Court is The Reynolds and Reynolds Company's ("Plaintiff") Motion

21  for Certification Pursuant to 28 U.S.C. § 1292(b) (Doc. 133).  Plaintiff wishes to appeal

22  the Court's dismissal of its CFAA and vagueness claims.  *Id.* For the following reasons,

23  Plaintiff's motion is denied.

24                                **BACKGROUND**

25          On May 20, 2020, the Court granted in part and denied in part two motions to

26  dismiss brought by the Defendants and Intervenor-Defendant.  (Doc. 91.)  Subsequently,

27  the Court denied Plaintiff's motion for preliminary injunction which sought to enjoin

28  enforcement of the Dealer Data Security Law ("the Dealer Law") passed by the Arizona

1    Legislature. A.R.S. §§ 28-4651–4655. The facts and procedural history are known to the

2    parties and summarized in the Court's Order. (Doc. 127.) Plaintiff filed a Notice of

3    Appeal, alerting the Court that it was appealing, pursuant to 28 U.S.C. § 1292(a)(1) and

4    pendant appellate jurisdiction, the denial of Plaintiff's Motion for Preliminary Injunction

5    and the order granting in part and denying in part Defendants' motions to dismiss.

6    (Doc. 129 at 2.) Plaintiff then filed the instant Motion for Certification, requesting

7    certification of the order on Defendants' Motion to Dismiss for appeal to the Ninth Circuit.

8    (Doc. 133.) The Court deferred ruling on Plaintiff's Motion for Certification, pending a

9    ruling from the Ninth Circuit on whether it would exercise pendent jurisdiction over the

10    Court's order on Defendants' Motion to Dismiss. (Doc. 141.) On October 25, 2021, the

11    Ninth Circuit declined to exercise pendent jurisdiction. (Doc. 158.)

**DISCUSSION**

**I.     Legal Standard**

Ordinarily "parties may appeal only from orders which 'end[] the litigation on the merits and leave[] nothing for the court to do but execute the judgment.'" *Couch v. Telescope, Inc.*, 611 F.3d 629, 632 (9th Cir. 2010) (quoting *Romoland Sch. Dist. v. Inland Empire Energy Ctr.*, 548 F.3d 738, 747 (9th Cir. 2008)); 28 U.S.C. § 1291. Under a narrow exception to the final judgment rule, a district court may certify an interlocutory order for appeal if three requirements are met: (1) the order "involves a controlling question of law," (2) "as to which there is substantial ground for difference of opinion," and (3) "that an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b).

A substantial ground for difference of opinion exists where "the circuits are in dispute on the question and the court of appeals of the circuit has not spoken on the point, if complicated questions arise under foreign law, or if novel and difficult questions of first impression are presented." *Couch*, 611 F.3d at 633 (quoting 3 Fed. Proc., L. Ed. § 3:212 (2010)); *cf. Facebook, Inc. v. Namecheap, Inc.*, No. CV-20-470-PHX-GMS, 2021 WL 961771, at *2 (D. Ariz. Mar. 15, 2021) (finding substantial ground for difference of opinion

- 2 -

1    when "[t]he Ninth Circuit has not spoken on this question, and district courts within the

2    Ninth Circuit, and in other circuits, are split on the issue").  "[J]ust because a court is the

3    first to rule on a particular question or just because counsel contends that one precedent

4    rather than another is controlling does not mean there is such a substantial difference of

5    opinion as will support an interlocutory appeal."  *Couch*, 611 F.3d at 633.

6    **II.    Analysis**

7            First, the Court's holding that the Computer Fraud and Abuse Act ("CFAA") does

8    not preempt the Dealer Law does not present a substantial ground for difference of opinion.

9    Plaintiff's cases stand for the proposition that users whose access to a computer system is

10   either revoked or never granted in the first instance act "without authorization" if they

11   subsequently attempt to access the system.  *See* 18 U.S.C. § 1030(a); *Facebook, Inc. v.*

12   *Power Ventures, Inc.*, 844 F.3d 1058, 1068 (9th Cir. 2016); *United States v. Nosal*, 844

13   F.3d 1024, 1038 (9th Cir. 2016); *In re Dealer Mgmt. Sys. Antitrust Litig.*, 362 F. Supp. 3d

14   558, 570 (N.D. Ill. 2019).  But that issue is distinct from whether the CFAA facially

15   preempts a state law that authorizes access.  Plaintiff has cited no authority indicating that

16   the CFAA has ever preempted a state law, or that a state law can never provide the requisite

17   authorization under the CFAA.[1]   Therefore, Plaintiff has not established a substantial

18   ground for difference of opinion.  *See Union Cnty. v. Piper Jaffray & Co.*, 525 F.3d 643,

19   647 (8th Cir. 2008) ("'While identification of a sufficient number of conflicting and

20   contradictory opinions would provide substantial ground for disagreement,' the County

21   offered no such Iowa opinions, statutes or rules, and 'a dearth of cases' does not constitute

22   'substantial ground for difference of opinion'" (quoting *White v. Nix*, 43 F.3d 374, 378 (8th

23   Cir. 1994))).

24
_____

25   [1] Nor does the Supreme Court's recent decision in *Van Buren v. United States* support
     Plaintiff's argument.  141 S. Ct. 1648, 1658 (2021).  There, the Court appeared to indicate
26   that it viewed the CFAA's "without authorization" clause as protecting computers and
     computer systems from "so-called outside hackers—those who 'acces[s] a computer
27   without any permission at all.'"  *Id.* (quoting *LVRC Holdings LLC v. Brekka*, 581 F.3d
     1127, 1133 (9th Cir. 2009)).  This is consistent with this Court's view that the purpose of
28   the CFAA's "without authorization" provision is to deter hackers and other high-tech
     criminals, rather than to preempt state regulation in the fields of consumer privacy and data
     protection.  (Doc. 91 at 7.)

1    Second, Plaintiff fails to establish a substantial ground for difference of opinion on

2    their vagueness claim.  To start, determining whether the statute is unconstitutionally vague

3    does not present a "novel and difficult question."  *Couch*, 611 F.3d at 633.  Even if the

4    Dealer Law's precise text may present an issue of first impression, determining whether a

5    statute is impermissibly vague is a familiar task.  *See, e.g.*, *Grayned v. City of Rockford*,

6    408 U.S. 104 (1972); *United States v. L. Cohen Grocery Co.*, 255 U.S. 81 (1921); *Nash v.*

7    *United States*, 229 U.S. 373 (1913); *see also Association des Eleveurs de Canards et d'Oies*

8    *du Quebec v. Harris*, 729 F.3d 937, 946 (9th Cir. 2013) (finding economic regulation

9    "subject to a less strict vagueness test than criminal laws" (quoting *Great Am. Houseboat*

10   *Co. v. United States*, 780 F.2d 741, 746 (9th Cir. 1986))).

11   Nor does *Johnson* create a substantial ground for difference of opinion.  *Johnson v.*

12   *United States*, 576 U.S. 591, 603 (2015).  There, the Court struck down a statute that

13   defined "violent felony" as including any felony "that . . . is burglary, arson, or extortion,

14   involves use of explosives, or otherwise involves conduct that presents a serious risk of

15   potential injury to another."  *Id.* at 593–94 (citing 18 U.S.C. § 924(e)(2)(B)).   The

16   unconstitutional vagueness problems arose from two sources.  First, the statute required

17   courts to ascertain the risk posed by a crime by considering a judicially imagined "'ordinary

18   case' of a crime" that "offer[ed] no reliable way to choose between . . . competing accounts

19   of what 'ordinary'" cases were.  *Id.* at 597.  Second, the statutory language left "uncertainty

20   about how much risk it takes for a crime to qualify as a violent felony" since courts were

21   forced to compare the risk posed by the "ordinary case" of a crime "in light of the four

22   enumerated crimes," which were each "far from clear in respect to the degree of risk"

23   posed.  *Id.* at 598.  However, the Court stressed that it did not "doubt the constitutionality

24   of laws that call for the application of a qualitative standard such as 'substantial risk' to

25   real-world conduct; 'the law is full of instances where a man's fate depends on his

26   estimating rightly . . . some matter of degree.'"  *Id.* at 604 (quoting *Nash*, 229 U.S. at 377).

27   Unlike in *Johnson*, the Dealer Law calls for the application of a qualitative

28   standard—"unreasonable restriction"—to real world conduct, not a judicially imagined

- 4 -

notion of what unreasonable conduct in the DMS industry may be. A.R.S. § 28-4653(A)(3)(b); *see Guerrero v. Whitaker*, 908 F.3d 541, 545 (9th Cir. 2018) (finding—under *Johnson*'s analysis—that since the "particularly serious crime" inquiry under 8 U.S.C. § 1231(b)(3)(B)(ii) applied only to real world facts, it is "not unconstitutionally vague on its face").[2] Therefore, *Johnson* does not establish substantial ground for difference of opinion.

## CONCLUSION

Since Plaintiff has not established a substantial ground for difference of opinion on either theory, it fails to satisfy 28 U.S.C. § 1292(b)'s requirements for certification of interlocutory appeals.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Certification Pursuant to 28 U.S.C. § 1292(b) (Doc. 133) is **DENIED**.

Dated this 1st day of December, 2021.

_____
G. Murray Snow
Chief United States District Judge

---

[2] While it is true that the statute does not specify the exact conduct it prohibits, the Court is "confident that 'reasonable' [DMS licensers], experienced in the industry and well-schooled in" the custom of trade between dealerships and DMS licensers "will be able to comply" with its terms. *Am. Coal Co. v. Fed. Mine Safety and Health Rev. Comm'n*, 796 F.3d 18, 28 (D.C. Cir. 2015).